**STATE of North Dakota, Plaintiff and Respondent,**

v.

**John W. MANNING, Defendant and Appellant.**

**Cr. No. 319.**

Supreme Court of North Dakota.

March 18, 1965.

————◆————

Helgi Johanneson, Atty. Gen., Bismarck, and John A. Alphson, State's Atty., and Robert A. Alphson, Asst. State's Atty., Grand Forks, for plaintiff and respondent.

Leibert L. Greenberg, Grand Forks, for defendant and appellant.

STRUTZ, Judge.

The defendant was convicted of the crime of leaving the scene of an accident and of failing to render reasonable assistance to a person injured in such accident. He appeals from the judgment of conviction, alleging a number of errors in the trial of the action. Among the errors claimed to have been committed by the court in the trial which resulted in defendant's conviction are:

1. The admission of testimony of certain witnesses whose names were not endorsed on the information at the time of the filing of the information; and

2. The use of evidence against the defendant, which evidence, defendant alleges, was taken at night from the garage attached to his residence and which evidence was secured by the State without a search warrant and without the consent of the defendant and in violation of the defendant's constitutional rights.

The defendant is a captain in the United States Air Force located at the Grand Forks air base. On the night of September 28, 1963, he drove his automobile on the public highway from the air base to Emerado, North Dakota, for the purpose of picking up a pizza at the latter town. On the way to Emerado, he is alleged to have struck a boy who was walking along the highway, fatally injuring him. The State contends that the defendant failed to stop at the scene of the accident or to give any assistance to the alleged victim, contrary to the provisions of Sections 39–08–04 and 39–08–06 of the North Dakota Century Code. He was arrested later for leaving the scene of an accident and for failing to render reasonable assistance. From a verdict of guilty by the jury, and judgment of conviction entered on such verdict, the defendant has taken this appeal.

The record discloses that the information had endorsed upon it, at the time it was filed, the names of certain witnesses. Thereafter, on February 20, 1964, the State's Attorney served notice upon the attorney for the defendant that he would move the court, on the opening day of the trial, that the names of twenty-one additional witnesses be endorsed on the information. At the time of the commencement of the trial, on the morning of February 24, 1964, or four days after the service of such notice, the defendant moved the court for an order prohibiting the introduction of testimony of any such additional witnesses or, in the alternative, for a continuance of the case. The trial court denied defendant's motion.

The record discloses that twelve of such additional witnesses were, in fact, called by the State and testified at the trial of the action. We must determine whether the denial of defendant's motion was prejudicial error.

The defendant cites numerous cases in support of his position in the matter. All of the cases cited, however, where decided prior to July 1, 1939. At the time of these decisions, before July of 1939, the law provided that the State's Attorney endorse on the information "the names of all witnesses for the prosecution known to him to be such at the time of the filing of the same, * * *" Sec. 7985, 1895 R.C.; Sec. 9794, 1905 R.C.; Sec. 10631, 1913 C.L.

In 1939, the Legislative Assembly amended this provision and required that, at the time of the filing of the information, the State's Attorney shall endorse on it the names of all witnesses on whose evidence the information was based. The amended law then goes on to provide:

"* * * and the state's attorney shall endorse on the indictment or information, at such time as the court by rule or otherwise may prescribe, the names of such other witnesses as he purposes to call. A failure so to endorse the said names shall not affect the validity or sufficiency of the indictment or information, but the court in which the indictment or information was filed, upon application of the defendant, shall direct the names of such witnesses to be endorsed. No continuance shall be allowed because of the failure to endorse any of the said names unless such application was made at the earliest opportunity and then only if a continuance is necessary in the interests of justice." Chap. 132, 1939 S.L.; Sec. 29-11-57, N.D.C.C.

■ Thus it will be noted that all that the law now requires is that the names of witnesses on whose evidence the information is based be endorsed on such information at the time it is filed. Such information may be based on the evidence of only one witness, and thus his name alone would have to be endorsed at the time of filing. If the defendant desires to have the names of other witnesses which the State may call, endorsed on the information, he may, under the above section, make application to the court and the court "shall direct the names of such witnesses to be endorsed."

■ We believe that the proceedings followed in this case by the trial court, which defendant complains of, were perfectly proper. The court, acting within its legal discretion in passing on the defendant's motion, did not, in our opinion, abuse that discretion.

■ We would further point out that, in a prosecution in a county court of increased jurisdiction, an information is not even required. The prosecution may be upon the criminal complaint. This court has held that a criminal complaint in a county court of increased jurisdiction is the equivalent of an information as contemplated by our State Constitution. State v. Buehler (N.D.), 125 N.W.2d 155.

A more serious question is presented by the defendant's claim of error in permitting the State to introduce evidence obtained by a search of the defendant's premises without a search warrant. Officer Combs testified that he had no search warrant, but that he searched the defendant's garage, which is attached to the defendant's residence, because he had been informed by the State's Attorney that the defendant had given his consent that such a search be made. It further appears that the defendant, in testifying in his own behalf, did not deny having given the State's Attorney such permission to enter his garage. The State further points out that, in any event, the defendant's wife opened the garage door, thus giving implied consent to the search and waiving the necessity of securing a search warrant.

Before deciding whether a valid consent was given for a search of the premises, we first must determine whether a consent was even necessary, or whether a valid search of the defendant's garage could be made without a search warrant. If the garage is not considered as being within the curtilage, no search warrant would be required.

■ Both the Federal and the State constitutions guarantee the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizure. Sec. 18, N.D. Constitution; Fourth Amendment, U.S. Constitution. Thus, in determining whether the officers making the search were guilty of an unreasonable search of the defendant's premises without warrant, we must consider the nature and the extent of the householder's interest in and privacy of the area into which the officers went, including its proximity to the actual dwelling of the defendant, and whether the place where such search was made was within the curtilage of the occupant. United States v. Lewis, D.C., 227 F.Supp. 433 (1964).

■ Here, the portion of the premises searched was the defendant's garage. The record discloses that the garage was attached to the house and was a part of the residence of the accused. We therefore believe that the garage was an intimate part of the residence and legally was in the curtilage of the accused. Marullo v. United States, 5 Cir., 328 F.2d 361 (1964).

■ Since both the Federal and the State constitutions guarantee all citizens security in their persons and houses against unreasonable search, the argument that it was necessary for the officer to act without a search warrant under the circumstances is irrelevant. Both the Federal and State constitutions make it crystal clear that the right of privacy of all persons must be respected.

Finally, in this regard, the State contends that, even though a search warrant should have been obtained, in this case both the accused and his wife consented to the search. Assuming, without deciding, that a wife has the power to give a valid approval to the search of premises of the accused, permitting such search to be made without a warrant, was such a consent, in fact, given in this case? The evidence upon which the State relies to prove permission by the wife is embodied in the testimony of William R. Schmeltzer, an air sergeant for the Base Air Police. The sergeant testified that he was told by his supervisor to remain at the quarters of the accused; that he thereupon parked his vehicle across the street from the residence of the accused, from which point he could observe the premises and watch the defendant's car which was in the garage. He testified that, after watching for a time, lights went on in the garage and he saw a woman in the garage; that he thereupon went to the garage door and knocked on the window. The person in the garage, who was the wife of the defendant, thereupon turned around. The sergeant testified:

> "She threw a pillow at me. It hit the glass on the door at which time the lady came over to the door, raised the garage door and I observed the pillow lying on the floor of the garage, inside the garage. At this time the lady told me to leave the residence, the quarters, as I didn't have any authority to be there."

The witness then continued:

> "So I went back over to my vehicle and got on the radio and called Air Police Operations and told them what happened and told them they better get a photographer down to take pictures of the car before anything further happened to it."

The sergeant then testified that the photographer, the highway patrolman, and Mr. Combs arrived at the scene and took pictures of the car. After they had taken pictures, they inspected the car.

■ This is the entire evidence on the question of the wife's consent. The only possible inference of permission was that she opened the garage door and obviously left it open. Her conduct and her language, as testified to by Sergeant Schmeltzer, rather than indicating a consent to a search, demonstrated just the opposite. She threw a pillow at the officer gazing through the window of the garage and she

ordered him to leave the premises. It is true that she did lift the garage door, but not for the purpose of admitting him. She opened the door merely for the purpose of establishing verbal communication with the officer on the outside. When the officer left, she did not close the door.

Proof of consent by a wife, if she has the authority to give such consent, must be clearly established. Here, the evidence is clear that she did not give such consent. It is clear, therefore, that the record will not sustain the contention of the State that the wife voluntarily permitted the search of the premises.

▆▆▆ The next question for us to determine is whether the accused himself waived his constitutional rights by knowingly consenting to a search of his premises, as the State contends. It is a well-established rule that the constitutional right of an individual to be secure in person and effects against unreasonable search and seizure is a right which may be waived. United States ex rel. Jones v. Myers, D.C., 226 F.Supp. 343 (1964). Thus, if a person knowingly waives his constitutional rights and consents to having his property searched by an officer without a search warrant, he may not thereafter claim that the search was illegal and in violation of his constitutional rights.

▆▆▆ Here, the State contends that the defendant waived his constitutional rights by voluntarily permitting the search. In order to be a valid waiver, there must be a clear and unqualified consent on the part of the defendant. The failure to object to a search is not a waiver. To be a valid waiver, it must clearly appear that the defendant voluntarily waived his rights and knowingly permitted the search by some express consent. 47 Am.Jur., "Searches and Seizures," Sec. 71, p. 547.

▆▆▆ Whether there has been an intelligent waiver of constitutional rights, therefore, depends upon the facts and circumstances of each particular case, including the background, the experience, and the conduct of the accused. Naples v. United States, 113 U.S.App.D.C. 281, 307 F.2d 618 (1962).

▆▆▆ The waiver of constitutional rights by a defendant is not to be inferred lightly, but must be clearly and intentionally made, and every reasonable presumption is indulged against the waiver. United States ex rel. Pierce v. Lane, D.C., 193 F.Supp. 395 (1961).

▆▆▆ Was there a clear and voluntary waiver of known rights in this case? All the record discloses to sustain the claim of waiver is the testimony of the investigating officer, Combs, who stated that the State's Attorney had informed him that the defendant had consented that such search be made. This testimony was objected to by the defendant. The investigating officer did not claim to have heard the defendant give his consent. His knowledge was based entirely upon the statement of the State's Attorney, made out of the presence of the defendant. The State's Attorney, to whom such consent allegedly was given, did not testify. Thus all we have on the question of consent is the testimony of the investigating officer who stated that the State's Attorney had told him that the defendant had consented to the search. In our opinion, this is not a sufficient showing of a clear and voluntary waiver of known rights by the defendant. No consent may be inferred from the fact that the defendant, while on the stand, failed to deny having given his permission to search, for it has been held that a waiver of constitutional rights may not be inferred from mere failure to deny. There must be proof of an intentional relinquishment of a known right or privilege. 79 C.J.S. "Searches and Seizures" § 62, p. 820; United States ex rel. Holloway v. Reincke, D.C., 229 F.Supp. 132 (1964).

Recent Federal decisions hold that, in determining whether there was a waiver

of a fundamental constitutional right, the courts will indulge every reasonable presumption against such waiver. Cross v. United States, C.A.D.C., 325 F.2d 629 (1963); United States ex rel. Noll v. Fay, D.C., 219 F.Supp. 262 (1963); Sherman v. Hamilton, 1 Cir., 295 F.2d 516 (1961).

From all of the facts in this case, we must hold that there was no voluntary relinquishment by the accused of his constitutional rights. The State contends, however, that the fruits of such search were admissible as evidence against the accused under the previous decisions of this court, citing State v. Fahn, 53 N.D. 203, 205 N.W. 67; and other cases.

It is true that this court, with other State courts, heretofore has held that the admissibility of evidence is not affected by the means through which such evidence was obtained, even though such means were illegal because of violation of constitutional provisions forbidding unreasonable searches and seizures. These State decisions, however, have been overruled by recent United States Supreme Court decisions commencing with the decision of that court in the case of Mapp v. Ohio, decided in June 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. In Mapp, police officers arrived at the accused's residence pursuant to information which they had obtained that a person was hiding in the home who was wanted for questioning in connection with a recent bombing, and that there was a large amount of policy paraphernalia hidden in the home. The accused and her daughter lived on the top floor of a two-family dwelling. When they arrived home, the officers knocked at the door and demanded entrance. The accused, however, after telephoning her attorney, refused to admit them without a search warrant. The officers informed their superiors of the situation and undertook a surveillance of the house.

Some hours later, after more officers had arrived, they again sought entrance to the home. When the accused did not immediately come to the door, one of the doors was forced open and the police entered. Meanwhile, the accused's attorney arrived, but the officers, having entered the home, continued their search and would not permit him to see his client or to enter the house. At the time the officers broke into the house, the accused was halfway down the stairs from the upper floor. She demanded to see a search warrant, and a paper claimed to be the search warrant was held up by one of the officers. She grabbed the paper and placed it in her bosom. A struggle ensued in which the officers recovered the paper, and as a result they handcuffed the accused because she had been "belligerent" in resisting their official rescue of the warrant from her person. She thereafter was forcibly taken upstairs to her bedroom where the officers searched her dresser, a chest of drawers, and some suitcases.

At the trial, no search warrant was produced by the prosecution, nor was the failure to produce one explained. The State contended that, even though the search was made without authority and was unreasonable, this fact did not prevent the use of any evidence which had been seized illegally. This is the same contention made by the State in this case.

The United States Supreme Court, in Mapp, overruled the State's contention and held that all evidence obtained by searches and seizures in violation of the Fourth Amendment to the Federal Constitution, guaranteeing the right to privacy free from unreasonable intrusion, is, by virtue of the due-process clause of the Fourteenth Amendment, inadmissible in a State court.

■ There are numerous decisions of both the State and Federal courts since the decision in Mapp, to the effect that evidence seized during an unlawful search cannot constitute proof against the victim of the search. United States ex rel. Holloway v. Reincke, D.C., 229 F.Supp. 132 (1964); People of State of California v. Hurst, 9 Cir., 325 F.2d 891 (1963); United States

v. Harris, 6 Cir., 321 F.2d 739 (1963); Williams v. United States, 10 Cir., 323 F.2d 90 (1963); State v. Post, 255 Iowa 573, 123 N.W.2d 11; State v. O'Kelly, 175 Neb. 798, 124 N.W.2d 211; State v. Harris, 265 Minn. 260, 121 N.W.2d 327; Commonwealth v. Wright, 411 Pa. 81, 190 A.2d 709.

This court, in the recent decision of State v. Govan (N.D.), 123 N.W.2d 110, clearly indicated that it would follow the Mapp decision if and when the question were raised in this court. In the Govan case, we held that, when peace officers were conducting an unreasonable search during which they discovered that a misdemeanor had been committed, the arrest of one of the participants in the misdemeanor did not give legality to a continuation of the search thereafter.

We therefore hold that the evidence obtained by this illegal search was not admissible as evidence against the accused in this case.

■ Having determined that the search was illegal and that the introduction of the evidence obtained as a result of such illegal search was error, we next must determine whether such error was prejudicial under all of the facts and circumstances in this case.

■ There is no definite rule by which it may be determined whether an error committed by the court in a criminal action, in deciding any question of law arising during the trial, is prejudical. Not every error is prejudicial, for not every departure from a perfectly tried case will justify a reversal. Each case, therefore, must be decided on its own facts. To be prejudicial, the error must be such that it must, in all probability, have had some effect on the jury's verdict. The purpose of reviewing a judgment in a criminal case is not to determine whether the record is perfect, but to determine whether the defendant has had a fair trial under the law and whether his conviction is based on evidence establishing his guilt beyond a reasonable doubt. Only when the appellate court can say that the error assigned could not have prejudiced the defendant in any way, will it be held to be not prejudicial. Yeldell v. United States, 153 A.2d 637, decided by the District of Columbia Municipal Appeals Court.

■ When a case is such that the conviction is adequately sustained on the testimony of the defendant himself, the error, in order to justify reversal, must be error which obviously is obnoxious to fundamental criminal procedure. Lord v. State, 237 Miss. 12, 112 So.2d 528.

But where the error committed by the trial court is fundamental, the reviewing court may not affirm even if it is without doubt of the defendant's guilt. Meeks v. United States, 9 Cir., 163 F.2d 598 (1947).

As was said by the United States Supreme Court in Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350,

"* * * the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials * * *"

The court then goes on to say:

"From presuming too often all errors to be 'prejudicial,' the judicial pendulum need not swing to presuming all errors to be 'harmless' if only the appellate court is left without doubt that one who claims its corrective process is, after all, guilty."

■ Since the defendant has a carefully guarded right to have his guilt adjudged by a jury, an appellate court should be slow to assume that an error in the trial was inconsequential. De Luna v. United States, 5 Cir., 308 F.2d 140 (1962).

■ In this case, the defendant took the stand. He testified that he had trouble with his car at about the point on the highway

where the deceased was found; that he thought he might have hit a post; and that he then drove to a place where there were lights a short distance from the scene of the alleged accident, found that he had had some damage to his vehicle, and then returned. The defendant testified that he gave his name and address and inquired whether a doctor and an ambulance had been called, all of which was in conformity with his duty under the law. This testimony in many respects was contradicted, and we believe, therefore, that the admission of the evidence secured by the illegal search, consisting of paint scrapings, blood, and hair removed from the car, and damage to the fender, was prejudicial.

Under Section 29–24–02 of the North Dakota Century Code, we find the causes for which a new trial may be granted in a criminal case. Subsection 5 of this section provides that such new trial may be granted when the court has erred in the decision of any question of law arising during the course of a trial. Under all of the circumstances in this case, we believe that the defendant is entitled to a new trial.

Several other errors are specified by the defendant, the determination of which are unnecessary to the decision on this appeal. However, since this case no doubt will be tried again, one of the errors alleged should be considered in this opinion because the same question may confront the court on retrial. The defendant contends that the court erred in permitting the prosecution to question him relative to his drinking of alcoholic beverages prior to the accident. Counsel objected to the question on the ground that his answer might tend to incriminate the accused of a collateral crime. He pointed out that a charge of driving while under the influence of intoxicating beverages was, at that very time, pending against the defendant. The court overruled the objection.

We believe the court properly overruled the objection as it was presented to him. A witness who wants to claim his constitutional privilege of refusing to answer questions on the ground that the answers might tend to incriminate him must make his claim in person. Counsel may not make it for him. State v. Kent (Pancoast), 5 N.D. 516, 67 N.W. 1052, 35 L.R.A. 518; State v. Ekanger, 8 N.D. 559, at 562, 80 N.W. 482.

Here, the accused had taken the stand in his own behalf. A defendant in a criminal case who voluntarily takes the stand is subject to the same rules of cross-examination as any other witness. He is required to answer any relevant and proper question on cross-examination, the answer to which will tend to convict him of the crime for which he is being tried, even though such answer may also incriminate him of a collateral crime. State v. Kent (Pancoast), 5 N.D. 516, 67 N.W. 1052, 35 L.R.A. 518; State v. Schmidt, 72 N.D. 719, 10 N.W.2d 868; State v. Isensee, 64 N.D. 1, at 19, 249 N.W. 898, at 905.

If, therefore, the answers to the questions complained of would reasonably tend to convict the accused of the crime for which he was being tried, the questions would be proper on cross-examination even though the answers to such questions would, at the same time, incriminate him of a collateral offense. If, on the other hand, the answers to the questions objected to would not tend to establish the guilt of the accused of the crime for which he was being tried, the questions are unjustified and a proper objection should be sustained.

For reasons stated herein, the judgment of conviction is reversed and a new trial is granted.

BURKE, C. J., and ERICKSTAD, KNUDSON, and TEIGEN, JJ., concur.