**STATE of North Dakota, Plaintiff
and Respondent,**

v.

**Rejean GAGNON, Defendant and Appellant.**

**Cr. No. 428.**

Supreme Court of North Dakota.

April 16, 1973.

Rehearing Denied May 11, 1973.

Helgi Johanneson, Atty. Gen., Bismarck, and Rodney S. Webb, State's Atty., Grafton, for plaintiff and respondent State of North Dakota.

Richard B. Bear, Bismarck, for defendant and appellant.

STRUTZ, Chief Justice.

The defendant was charged with possession of a controlled substance, to wit, thirty pounds of marijuana, with intent to deliver the same, contrary to law. He was tried to a jury, was convicted of mere possession of a controlled substance, and was sentenced to serve one year in the State Penitentiary commencing on the fourth day of April 1972.

■ He filed a timely notice of appeal, but took no further steps to perfect his appeal. After a long delay, his attorney decided that he no longer could represent him, and an application was made to this court for the appointment of another attorney. Since this court has no authority to appoint counsel for indigent defendants, we requested the trial court to appoint other counsel, which was promptly done, and steps were taken for the immediate perfection of the defendant's appeal.

At the time of the appointment of such other counsel, the time had already expired in which the appeal could be placed on the calendar of this court for its November 1972 Term. Since the defendant's term in the State Penitentiary was to expire on December 21, 1972, we determined that this case should be heard forthwith, prior to the December Term. It therefore was set for argument out of Term time and was heard on the 16th day of November 1972 at 10 a. m.

The defendant has served his sentence in the State Penitentiary and has been released. However, since the appeal raised a number of very serious issues involving arrest, and search and seizure, we have deemed it advisable to determine the issues raised on this appeal for the guidance of public officials who may face similar questions in the future.

In order to decide the issues raised, it is necessary for us to review the facts in the case:

—During the day on which the defendant was arrested, his actions had aroused considerable interest and suspicion when he went to Schumacher's Tire Repair Shop in Grafton on several occasions for help in breaking the top bead of tires on his vehicle and for help in inflating the tires. One of the Schumacher employees testified that he had helped the defendant inflate one of his tires and that the tire seemed heavier than normal. His suspicions were aroused when the defendant tried to prevent him from lifting the tire. Employees at the service station felt that it was unusual for the defendant to request their help in breaking only the top bead of a tire without asking them to do any work on the tire. These unusual requests were especially suspicious to one of the employees at the service station who happened to be a reserve member of the Grafton city police force.

—On the evening of the day when the above events had occurred, this reserve member of the Grafton police force was eating his dinner in a downtown cafe with a friend who was a member of the North Dakota Highway Patrol. He related to the highway patrolman what had occurred during the day, and while they were discussing the matter the defendant walked into the cafe. The highway patrolman immediately arranged for a pickup of the defendant and called the assistant chief of police to assist him. As the defendant left the cafe, he was followed by the officers to a point approximately 1½ blocks from the police station. There the officers went to the defendant's car where the highway patrolman identified himself, informed the defendant of his constitutional rights, and stated that he was investigating defendant's activities on that afternoon at Schumacher's Tire Repair Shop. The defendant then was arrested and taken into custody, and he and his vehicle were taken to the police station.

—After the defendant and his vehicle had been taken to the police station, the highway patrolman notified the Border Patrol that a Canadian, Rejean Gagnon, had been detained because he had been acting

in a suspicious manner in connection with the changing of his tires, and the border patrolman who took the call requested that the defendant be held for further investigation.

—Less than an hour after this telephone conversation, the border patrolman appeared at the police station and talked·with Gagnon. His answers to questions put to him by the patrolman were very unsatisfactory. This officer was aware that a lookout had been posted against the defendant because of his attempt to make an illegal entry into the country on several previous occasions. After conferring with his superior in Grand Forks, the border patrolman arrested the defendant, and his vehicle and its tires were ordered examined. The officers first looked in the glove compartment, where they found Gagnon's passport and the rental agreement for leasing the car.

—The weather was extremely cold, and the vehicle was taken to the service station where it could be thoroughly inspected inside, out of the cold. The search which followed was made without a search warrant. It revealed a box containing a number of packets of cigarette papers. The trunk then was opened and some green material resembling marijuana was found on the floor of the trunk. Next, the spare tire was opened, but this revealed nothing. The car then was put on a hoist and the tires were examined. It was noticed that there were small rubber strands on one of the tires on the right side, indicating that the car had been driven only a short distance after this tire had been placed on the vehicle. That tire, although inflated, sounded very flat when it was tapped. It was removed and opened, and was found to be completely stuffed with plastic bags containing marijuana. Two other tires on the car were found to contain marijuana. A total of thirty pounds of the drug was found in the three tires. The following morning, a search warrant was secured from a local magistrate authorizing· the search of the defendant's room at a local

motel. This search produced some green material on the bathroom floor, in the bathtub, and on the carpet. Tire marks were found on the carpet of the defendant's room, together with a packet of cigarette papers and two hand-rolled cigarettes. The green material was found by the State Toxicologist to be marijuana.

From these facts, it would appear to be clear that the defendant was illegally in possession of marijuana, the crime of which he was convicted. He strenuously asserts, however, that regardless of these facts, his arrests by the highway patrolman and, later, by the border patrolman were unlawful; that the search of his vehicle was invalid both as a search incidental to a lawful arrest and as a border search; and that the evidence on which he was convicted. had been wrongfully admitted into evidence.

■■ The admission of evidence discovered as a result of an unreasonable or unlawful search is prohibited, but what is or is not a reasonable search cannot be defined in definite terms and each case must be decided on its own facts. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947).

■ All searches made without a valid search warrant are unreasonable unless they are shown to come within one of the exceptions to the rule that a search must be made upon a valid search warrant. Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

■ A search based upon a mere suspicion that some law has been violated is prohibited, and general exploratory searches are forbidden. Stanford v. Texas, 379 U.S. 476, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965).

■■ One of the exceptions to the requirement of a valid search warrant is that a search may be made incidental to a lawful arrest. An arrest without warrant

must be made on reasonable cause. Sec. 29–06–15, N.D.C.C.

■■ Was there reasonable or probable cause for the officers to arrest the defendant in this case, after he had left the cafe? The officers had no idea what the defendant might be up to or what crime, if any, he might be guilty of, although his actions were suspicious. An arrest without warrant cannot be made, however, upon mere suspicion. Thus the attempted arrest in the instant case was unlawful because the officer making the arrest without warrant did not inform the defendant of the cause of his arrest, as required by Section 29–06–17, North Dakota Century Code, except to say that they were investigating his activities. The exceptions listed in that statute which make the giving of such information unnecessary do not apply in this case.

■■ Although we find that the arrest of the defendant without warrant was unlawful in this case because it was not made on probable cause, let us for the sake of argument assume that there was probable cause for his arrest. Even where the arrest is lawful, in order to justify a search without warrant, there must be exigent circumstances, in addition to probable cause, which require immediate action. What were the exigent circumstances which would justify the search of the defendant's automobile after the defendant was in custody? He could not escape nor could he destroy any evidence that might have been in his automobile. There was no justification for not securing a warrant before the officers searched it. Further, a search without warrant incidental to a valid arrest must be confined to the person and the area within which the defendant might reach weapons or destroy the evidence. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Here, the defendant was in jail.

The decision of the United States Supreme Court in the case of Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), is, we believe, directly in point. There, an arrest was made of the defendant in an automobile on the street, as in the instant case. The search of the automobile was made later at the police station. This search was held to be unlawful by the United States Supreme Court.

See also the decision of the United States Supreme Court in Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968), where a lawful arrest was made on the highway and a search of the automobile was made later at the police station. That search also was held to be unlawful.

■ In our case, the defendant was in custody of the police at the police station and the automobile was not searched at the station. It was taken to a service station and searched there. Certainly there were no exigent circumstances which would justify a warrantless search. The defendant could not have escaped while a warrant was being secured, nor was there any evidence within his reach which he might have destroyed while a warrant was being obtained.

The State asserts that the search conducted by the officers was justified as a border search under 8 U.S.C.A. Section 1357(a)(3). That subsection provides that any officer or employee of the [Immigration] Service authorized under regulations prescribed by the Attorney General shall have power without warrant—

"(3) within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle, and within a distance of twenty-five miles from any such external boundary to have access to private lands, but not dwellings, for the purpose of patrolling the border to prevent the illegal entry of aliens into the United States; . . . "

■ Under this law cited by the State, the Border Patrol would not need probable cause to search for aliens. But the Border Patrol did not suspect Gagnon of smuggling aliens into the country. The patrolman knew that Gagnon had been in Grafton for an entire day, and that any aliens he might have smuggled in from Canada certainly would not still be hidden in the car.

Section 1357(a)(1), (c) of 8 U.S.C.A. permits any Immigration officer to interrogate any alien or person believed to be an alien and to conduct a search, without warrant, of the person, and of the personal effects in the possession of such person seeking to enter the United States, concerning whom the officer may have reasonable cause to suspect that grounds exist for his exclusion from the United States under the law which would be disclosed by such search.

■ The legality of such border search depends on the totality of the circumstances of time elapsed since the suspect crossed the border, the distance from the border at the time of search, and the manner and extent of surveillance of the suspect from the time he crossed the border. All of these circumstances must be such as to convince the finder of fact with reasonable certainty that any contraband found in the possession of such person or in or on the vehicle at the time of such border search was aboard the vehicle at the time of entry into the country. Alexander v. United States, 362 F.2d 379 (9th Cir. 1966).

■ In the case before us, approximately twenty-four hours had elapsed between the time of entry into the country and the time when the defendant was arrested. Grafton is approximately forty-five miles from the border, and there was no surveillance of the defendant after he crossed the border. It is obvious that the contents of the car could have been changed after the defendant crossed the border, and no finder of fact could reasonably find, under the circumstances, that the condition of the car or its contents were unchanged from the time defendant entered the United States to the time of his arrest.

Other Federal decisions would compel us to hold that the search in this case would not be justified as a border search. In United States v. Garcia, 415 F.2d 1141 (9th Cir. 1969), two defendants crossed the border and were searched. Nothing was found. One of the defendants then got into a second car that had not been seen crossing the border. That car was stopped, and marijuana was found. The second defendant got into a car with another person, which car had not been under surveillance. They, too, were stopped. Marijuana was found in that car also. The court held that neither of these searches qualified as a border search which would not require probable cause. The first was not a border search because the car was not seen crossing the border. The second was held not to be a border search because the car had not been under surveillance from the time it had crossed the border, and its contents could have been changed after it had crossed into the United States. The totality of the circumstances in each instance did not qualify the searches as border searches under Alexander v. United States, *supra*.

In Valenzuela-Garcia v. United States, 425 F.2d 1170 (9th Cir. 1970), the defendant's car was searched at a point forty-eight miles north of the Mexican border. Marijuana was found. The court, however, held that this was not a valid border search since there had not been surveillance of the defendant's car from the time he crossed the border. Applying the same rule in the case at bar, the search cannot be justified as a border search.

It is true that courts have held that an automobile may more readily be searched without a warrant than an office or a house. The opportunity of searching a car is fleeting because it is easily moved. There was no such exigency involved here,

however, since the defendant was in custody and was not in a position to escape or to destroy evidence.

For reasons set forth in this opinion, we believe that the warrantless search of the defendant's automobile was improper and unlawful, and that the court should have granted the defendant's motion to suppress the evidence which was discovered as a result of that search. When the search which disclosed this evidence was made, the defendant was in custody at the police station and there was no danger that the car would be moved. Therefore, the search of the automobile without warrant failed to meet the test of reasonableness under the Fourth Amendment.

For reasons stated, the judgment of conviction must be reversed.

ERICKSTAD, PAULSON and KNUDSON, JJ., and CLIFFORD JANSONIUS, District Judge, concur.

TEIGEN, J., did not participate; CLIFFORD JANSONIUS, District Judge of the Fourth Judicial District, sitting in his place.