STATE of North Dakota, Plaintiff
and Appellee,

v.

Neil C. JOHNSON, Defendant
and Appellant.

Cr. No. 735.

Supreme Court of North Dakota.

Jan. 23, 1981.

John R. Gregg, Bottineau, for defendant and appellant.

A. S. Benson, State's Atty., and Asmunder S. Benson III, Asst. State's Atty., Bottineau, for plaintiff and appellee; argued by Asmunder S. Benson III.

SAND, Justice.

This is an appeal by the defendant, Neil Johnson [Johnson], from a jury verdict of guilty for theft of property. Johnson alleges that the trial court erred by failing to suppress the State's introduction into evidence of a blue, portable air compressor because the deputy sheriff obtained the air

compressor as the result of a warrantless search and seizure.

In December 1978 a blue, twin–cylinder air compressor belonging to Marc Nelson [Nelson] was stolen from Nelson's father's garage in Bottineau, North Dakota. Sometime in October 1979 Mrs. Carl Kroeplin told a Mrs. Williams that she had observed a blue air compressor outside a mobile home rented by Johnson from the Kroeplins. Mrs. Williams was aware of the theft of the air compressor and informed Nelson that there was an air compressor at Johnson's mobile home similar to the one stolen from him. On 27 Oct. 1979 Nelson went out to the defendant's mobile home by himself and recognized the air compressor as the one stolen from his father's garage.[1] Nelson notified the Bottineau County sheriff's office and on Tuesday, 30 Oct. 1979, Nelson and deputy sheriff Roger Hall went out to the defendant's mobile home. Nelson identified the air compressor as his. The defendant was not home and nothing further was done at this time.

On 31 Oct. 1979 deputy Hall drove past Johnson's mobile home around noon and observed that Johnson's vehicle was not there. Later that day Hall returned to Johnson's mobile home and observed that Johnson was still not home. Hall then called Nelson and asked him to come out and help pick up the air compressor. The air compressor was then transported to the county shop in Bottineau. All activity leading up to and including the seizure of the air compressor was done without benefit of a warrant.

The defendant, at the time of the seizure, lived in one of two rental mobile homes located on land owned by Carl Kroeplin approximately 8 miles south of Bottineau and adjacent to what is referred to as the Gardena road. The two rental mobile homes were approximately 400 feet north of the Gardena road. The Kroeplin residence was approximately 100 yards north of the two rental mobile homes. A photograph of the area reveals that there were trees[2] between the two mobile homes and the Kroeplin residence. A driveway to the Kroeplin residence was on the west side of and parallel to the two mobile homes. One of the mobile homes was next to the driveway and the home rented by defendant was approximately 25 feet east of that mobile home. On the west side of the mobile home rented by defendant there was an 8′ × 7′5″ enclosed entryway. The 3-foot long air compressor was next to the north side of this entryway and was not observable from the Gardena road or the part of the driveway south of the rental mobile homes. The air compressor was observable from the neighbor's mobile home and the Kroeplin's yard, as well as the part of the driveway north of the two mobile homes.

Carl Kroeplin testified at the suppression hearing that he maintained the lots occupied by the mobile homes and mowed the lawns around both mobile homes, including the area where the air compressor was kept.

Johnson was charged with theft of property in violation of § 12.1–23–02, North Dakota Century Code. Johnson by motion asked that the air compressor be returned to him and be suppressed as evidence against him because it was unlawfully seized. The district court, in a memorandum decision dated 17 Apr. 1980, denied Johnson's motion because it found there was no reasonable expectation of privacy as to the area where the air compressor was located. The air compressor was subsequently introduced into evidence at Johnson's trial, and a 12-person jury returned a verdict of guilty against Johnson. Johnson appealed from that verdict.

1. Nelson testified at the suppression hearing that his air compressor was a blue, twin-cylinder, 22-gallon tank, Coast-to-Coast model with dents in a shield around the belts for the fan and with bearings loose in the wheels. These were characteristics of the air compressor seized from the mobile home rented by Johnson.

2. There was no direct evidence if the line of vision was obstructed when leaves were on the trees. Judicial notice can be taken that trees shed their leaves in the fall.

■ The first issue raised in this appeal is the threshold question of whether or not the activity of the deputy sheriff in this instance constituted a search and seizure within the protection of the fourth amendment to the United States Constitution. If there was a constitutionally protected area from search and seizure, then the mandate of the fourth amendment securing the people against unreasonable search and seizure requires a warrant, unless the search and seizure falls within a recognized exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

In *Katz v. United States, supra,* the United States Supreme Court defined a search and seizure within the protection of the fourth amendment as a violation of "privacy upon which he [Katz] justifiably relied." The standard which has evolved from *Katz* is that if an individual has a reasonable expectation of privacy in the area searched, or the materials seized, then a search and seizure within the protection of the fourth amendment has been conducted. *United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

This Court has previously delineated the following three basic premises in determining the constitutionality of a search:

"One, as stated in *State v. Gagnon*, 207 N.W.2d 260, 263 (N.D.1973), 'All searches made without a valid search warrant are unreasonable unless they are shown to come within one of the exceptions to the rule that a search must be made upon a valid search warrant. *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).' To the same effect, *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

"Two, where a violation of the Fourth Amendment provision as to search and seizure is asserted, the burden of proof on a motion to suppress is on the State. *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969 [1971], 26 L.Ed.2d 409 (1970).[3] [Footnote ours.]

"Three, ever since *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), evidence obtained by search and seizure violative of the Fourth Amendment is, by virtue of the Due Process Clause of the Fourteenth Amendment, inadmissible in State courts. *State v. Manning*, 134 N.W.2d 91 (N.D.1965)." *State v. Matthews*, N.D., 216 N.W.2d 90 at 99.

These premises function within the framework of the use of the court-made exclusionary rule in instances in which there has been a violation of constitutional rights.

A substantial number of legal scholars and writers are questioning or doubting that the court-made exclusionary rule is accomplishing its stated purposes or objectives, or is worth the societal cost. *Stone, Warden v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976); and *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). See also, Judicature, Vol. 62, No. 2, page 67, and Judicature Vol. 62, No. 5, page 214 (debates on the exclusionary rule between Judge Malcolm Wilkey, United States Court of Appeals, in opposition to the rule, and Yale Kamisar, Professor of Law, University of Michigan). While we may be impressed with the views of Judge Wilkey, we nevertheless must abide by the rule of law established by the United States Supreme Court and made applicable to the states.

Johnson asserts that he had a reasonable expectation of privacy as to the area immediately north of the entryway to his mobile home and to the air compressor located

---

3. We note that within the context of cases dealing with standing to assert a violation of constitutional rights, the United States Supreme Court has put the burden of establishing a legitimate expectation of privacy upon the person relying or claiming that such privacy was violated. *Rawlings v. Commonwealth of* Kentucky, —— U.S. ——, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In this instance, the question of the burden of proof is not dispositive of this case.

there so as to be protected by the fourth amendment. The State contends that Johnson had no reasonable expectation of privacy in the area around the mobile home.

■ In this instance there are several factors which lead us to conclude that Johnson did have a reasonable expectation of privacy as to the area north of the entryway to his mobile home and the air compressor.

The air compressor was behind the entryway and not visible from the Gardena road. The air compressor was visible from the neighbor's mobile home and the Kroeplin's yard, as well as the part of the private driveway to the Kroeplins which was north of the two mobile homes. There was and is considerable doubt as to the distance the air compressor was sufficiently visible so as to make a definite, reliable identification of it as the one stolen from Nelson.

With this in mind, we conclude that Johnson had a qualified expectation of privacy as to his neighbor in the adjacent mobile home and to his landlord, the Kroeplins. As to the general public, his expectation of privacy was unqualified. With reference to the neighbors and their invitees, Johnson's expectation of privacy was considerably reduced. Johnson could not, under the facts of this case, legally claim an unqualified expectation of privacy as to what could be observed by his neighbors or their invitees. While Johnson had a reduced expectation of privacy as to his neighbors, it does not necessarily follow that he had no expectation of privacy as to the general public.

The state's attorney relied heavily upon *People v. Hopko*, 79 Mich.App. 611, 262 N.W.2d 877 (1978), in support of the state's position. However, *Hopko* is readily distinguishable from the instant case.

In *Hopko*, a joint tenant invited the officer to come on the premises and led the officer into the back yard shared by the joint tenant with the defendant to investigate whether or not marijuana was growing there. The officer saw from the cotenant's garden area what appeared to be marijuana growing in the defendant's garden area and, wishing to confirm his view, called the tri-county metro narcotics squad for assistance. The narcotics squad arrived shortly, and upon examination confirmed that it was marijuana. The officer, fearing the owner might remove the marijuana, pulled the plants out of the ground. The Michigan Court of Appeals concluded that there was no search within the meaning of the fourth amendment because the officer was invited into the area by the cotenant. The *Hopko* court found that the defendant could not reasonably expect his cotenant to shut his eyes to what could obviously be observed from the cotenant's garden plot, nor could he reasonably expect privacy from what invitees of the cotenant could observe while standing on the cotenant's garden or the part of the lawn area which they shared in common.

In the instant case Nelson was not a joint tenant, yet he was the one who invited the law enforcement officer to come onto the premises. Furthermore, in our instance we are not dealing with items, such as marijuana plants, which are by law illegal in many states. We conclude on the basis of the foregoing that Johnson did have a reasonable expectation of privacy in this instance.

■ Because the deputy sheriff made a search and seizure within the meaning of the fourth amendment without a warrant, the legal justification for this action must rest on a valid, legally recognized exception. All warrantless searches and seizures are unreasonable unless, in addition to probable cause, they come within one of the "specifically established and well delineated exceptions" to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Katz, supra; State v. Matthews, supra.*

In *State v. Matthews, supra* at 100, we concluded that:

"... 'exigent circumstances' is not an exception to the requirement of a warrant, but is only a handy way of describing the circumstances which give rise to one or another of the generally recognized exceptions mentioned earlier."

■ Although deputy Hall testified that the reason he seized the air compressor was because he was concerned something might happen to it, we cannot escape the reality of the actual situation. The air compressor was not dangerous in itself, nor was it contraband in the true sense. Neither was it obvious to neighbors or their invitees that it was stolen. Even though the air compressor could easily be moved, the deputy sheriff did not consider this a material factor because, after being informed of the location of the air compressor, the deputy sheriff, for one reason or another, waited three days to go to the Johnson home and then left, only to return the next day and seize the air compressor without a warrant. At no time when either Nelson or the deputy sheriff were at the mobile home was Johnson present. Nor was there any reason for Johnson to believe there was any type of investigation in progress.

This case is distinguishable from *Hopko, supra,* in this respect. In *Hopko,* exigent circumstances existed because the item seized was marijuana which the *Hopko* court noted could be "quickly removed" and, more importantly, the defendant was present in his apartment during the investigation. A comparable situation did not exist in the instant case.

This case is also distinguishable from *State v. Klodt,* 298 N.W.2d 783 (N.D.1980), in which a pickup was parked on private property and the owner of the premises requested the sheriff to remove the pickup. The pickup, in reality, was abandoned. The sheriff, in removing the pickup, noticed items which were in plain view. The property in the vehicle was removed to secure it, which was in line with the case of *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and *Coolidge v. New Hampshire, supra.*

The facts in this case provide ample probable cause for a search warrant, which should have been obtained. If the law enforcement official had secured a search warrant the issue as to the admissibility of the evidence seized could not have been successfully raised. Numerous hours, and societal costs would have been eliminated. Law enforcement officials should realize that in many instances by going the one extra "step" many headaches and problems can be and would be eliminated. We conclude that while the conduct of the deputy sheriff may not have risen to the level of conscious misconduct, we cannot, in the absence of exigent circumstances, condone his failure to secure a warrant.

■ The State asserts that the doctrines of the independent source rule and the inevitable discovery rule purge the taint of any illegality regarding the seizure. The substance of these rules appears to be that evidence acquired within these concepts is not tainted by the "fruit of the poisonous tree." *In Interest of M.D.J.,* 285 N.W.2d 558 (N.D.1979).

In *State v. Phelps,* 297 N.W.2d 769, 775 (N.D.1980), we delineated the following two-part test to determine the application of the inevitable discovery theory:

"... First, use of the doctrine is permitted only when the police have not acted in bad faith to accelerate the discovery of the evidence in question. Second, the State must prove that the evidence would have been found without the unlawful activity and must show how the discovery of the evidence would have occurred."

The first criteria is necessary because one purpose of the exclusionary rule is to prevent and deter shortcuts in law enforcement. See 3 W. LaFave, Search and Seizure, § 11.4 (1978). If the inevitable discovery theory applied when a shortcut was taken, as in the instant case, the net result would be that the magistrate's determination of probable cause as required by the fourth amendment would be eliminated for all practical purposes. This we cannot do.

In no instance is this type of shortcut more apparent than in the present case in which the warrant requirement was bypassed in the absence of exigent circumstances. We conclude that the requirements of the inevitable discovery doctrine have not been met in this case.

In our opinion the comments on the shortcuts which are applicable to the inevitable discovery rule are equally applicable to the independent source rule.

We conclude that the air compressor should have been suppressed as evidence. Accordingly, we remand the case for retrial.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VANDE WALLE, JJ., concur.