Wayne LUBENOW, Petitioner
and Appellant,

v.

NORTH DAKOTA STATE HIGHWAY
COMMISSIONER, Respondent
and Appellee.

Civ. No. 880136.

Supreme Court of North Dakota.

March 28, 1989.

William Kirschner & Associates, Fargo, for petitioner and appellant; argued by William Kirschner.

Robert E. Lane, Asst. Atty. Gen., State Highway Department, Bismarck, for respondent and appellee.

GIERKE, Justice.

This is an appeal by Wayne Lubenow (Lubenow) from a district court judgment [1] which affirmed the administrative hearing officer's decision to revoke Lubenow's driving privileges for a period of one year. We affirm.

On December 31, 1987, Terry Schander (Schander) observed Lubenow driving his car erratically going from one lane to the other. Schander proceeded to follow Lubenow's vehicle which was a white Chrysler and called the police department from his phone in his pickup for assistance. Schander followed Lubenow's vehicle for several blocks until Lubenow turned into the driveway of his home. Lubenow sat in his car in the driveway awhile and then pulled the car into the garage. Schander observed Lubenow exit his vehicle and lay down in the driveway outside the garage. Lubenow then got up and walked around to the passenger side of the vehicle.

At this point, Officer Olson arrived. Schander directed Officer Olson's attention to the white Chrysler in the garage. Officer Olson observed the white Chrysler in the garage and noticed the driver's door

---

1. Lubenow's notice of appeal, dated May 5, 1988, states that the appeal is from "the Memorandum Opinion and Order ... entered in this action on March 22, 1988." A subsequent judgment consistent with that memorandum opinion and order was entered on April 20, 1988, and consequently this appeal is properly before this Court. *See Olson v. Job Service North Dakota,* 379 N.W.2d 285, 287 (N.D.1985); *Federal Savings & Loan Insurance Corp. v. Albrecht,* 379 N.W.2d 266, 267 (N.D.1985).

open and a body lying along side the car. Officer Olson radioed to the dispatcher that there was a man down in the garage. Officer Olson then ran into the garage to determine whether or not there was a problem. Officer Olson helped Lubenow to his feet and noticed a cut under his right eye and a cast on his right arm. Officer Olson twice asked Lubenow whether or not he needed medical assistance and was twice refused. Officer Olson smelled a strong odor of alcohol on Lubenow's breath and asked him to come back to the patrol car. After placing Lubenow in the back seat of the patrol car, Officer Olson asked Schander whether or not Lubenow was the individual who was driving the white Chrysler. Schander stated that Lubenow was the driver of the vehicle that he followed.

At this point in time, Officer Volrath arrived. Officer Olson and Officer Volrath joined Lubenow in the patrol car. The officers had Lubenow perform some field

sobriety tests which Lubenow failed. After reading the implied consent advisory to Lubenow, Officer Olson asked him if he understood it. Lubenow responded that he did. Officer Olson then asked Lubenow to take an ALERT test. Lubenow refused to take the ALERT test. Officer Olson then placed Lubenow under arrest for driving while under the influence. Officer Olson then asked Lubenow to submit to a blood-alcohol test. Lubenow refused.

Lubenow's license was revoked for one year pursuant to Section 39–20–04 of the North Dakota Century Code.[2] Lubenow requested, pursuant to Section 39–20–05 of the North Dakota Century Code, a hearing on the license revocation.[3] A hearing was held on January 27, 1988, at which time the hearing officer sustained the revocation of Lubenow's driver's license.

Lubenow appealed this decision to district court pursuant to Section 39–20–06 of

**2.** Section 39–20–04, N.D.C.C., provides in part as follows:

"39–20–04. Revocation of privilege to drive motor vehicle upon refusal to submit to testing. If a person refuses to submit to testing under section 39–20–01 or 39–20–14, none may be given, but the law enforcement officer shall immediately take possession of the person's operator's license and shall immediately issue to that person a temporary operator's permit, if the person then has valid operating privileges, extending driving privileges for the next twenty-five days or until earlier terminated by a decision of a hearing officer under section 39–20–05. The law enforcement officer shall sign and note the date on the temporary operator's permit. The temporary operator's permit serves as the commissioner's official notification to the person of the commissioner's intent to revoke driving privileges in this state and of the hearing procedures under this chapter. The commissioner, upon the receipt of that person's operator's license and a certified written report of the law enforcement officer in the form required by the commissioner, forwarded by the officer within five days after issuing the temporary operator's permit, showing that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01 or equivalent ordinance or, for purposes of section 39–20–14, had reason to believe that the person committed a moving traffic violation or was involved in a traffic accident as a driver, and in conjunction with the violation or accident the officer has, through the officer's observations, formulated

an opinion that the person's body contains alcohol, that the person was lawfully arrested if applicable, and that the person had refused to submit to the test or tests under section 39–20–01 or 39–20–14, shall revoke that person's license or permit to drive and any nonresident operating privilege for the appropriate period under this section, ..."

**3.** Section 39–20–05, N.D.C.C., provides in part as follows:

"39–20–05. Administrative hearing on request.
"1. Before issuing an order of suspension, revocation, or denial under section 39–20–04 or 39–20–04.1, the commissioner shall afford that person an opportunity for a hearing if the person mails a request for the hearing to the commissioner within ten days after the date of issuance of the temporary operator's permit. The hearing must be held within twenty-five days after the date of issuance of the temporary operator's permit, but the hearing officer may extend the hearing to within thirty-five days after the issuance of the temporary operator's permit if good cause is shown. If the hearing date is extended beyond twenty-five days from the issuance of the temporary operator's permit, the commissioner shall provide extended temporary operator's privileges to the date of the hearing. If no hearing is requested within the time limits in this section the expiration of the temporary operator's permit serves as the commissioner's official notification to the person of the revocation, suspension, or denial of driving privileges in this state."

the North Dakota Century Code.[4] On April 20, 1988, the district court entered a judgment sustaining the decision of the hearing officer. On May 6, 1988, Lubenow filed this appeal.

The primary issue raised in this appeal is whether or not the activity of Officer Olson in this instance was a violation of Lubenow's right to be free from an unreasonable search and seizure under the Fourth Amendment to the United States Constitution and Article I, Section 8 of the North Dakota Constitution.

The Fourth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Further, Article I, Section 8 of the North Dakota Constitution protects the right of people to be secure in their persons, houses, papers and effects from unreasonable searches and seizures.

In *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court defined a search and seizure within the protection of the Fourth Amendment as a violation of privacy upon which a person justifiably relied. Accordingly, the standard which has evolved from *Katz v. United States, supra*, is that if an individual has a reasonable expectation of privacy in the area searched or the materials seized, then a search and seizure within the protection of the Fourth Amendment has been conducted. *State v. Johnson*, 301 N.W.2d 625 (N.D.1981); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

■ Initially, we must determine whether or not the entry by Officer Olson into Lubenow's garage was a search within the constitutional sense. In determining whether Officer Olson's entry into the garage constituted a search, we must consider the nature and the extent of the defendant's interest in and privacy of the area into which the officer entered.

In *State v. Manning*, 134 N.W.2d 91, 96 (N.D.1965), we stated "that the garage was an intimate part of the residence and legally was in the curtilage of the accused." Accordingly, we determined in *State v. Manning, supra*, that the garage was a place where the owner had a reasonable expectation of privacy and therefore it was constitutionally protected against unreasonable searches.

In the instant case, the part of the premises entered was Lubenow's garage. Officer Olson entered Lubenow's garage after responding to information from Schander and observing Lubenow in the garage. The garage door was fully open exposing

---

4. Section 39–20–06, N.D.C.C., provides as follows:

"39–20–06. Judicial review. Any person whose operator's license or privilege has been suspended, revoked, or denied by the decision of the hearing officer under section 39–20–05 may appeal within seven days after the date of the hearing under section 39–20–05 as shown by the date of the hearing officer's decision, section 28–32–15 notwithstanding, by serving on the commissioner and filing a notice of appeal and specifications of error in the district court in the county where the events occurred for which the demand for a test was made, or in the county in which the administrative hearing was held. The court shall set the matter for hearing, and the petitioner shall give twenty days' notice of the hearing to the commissioner and to the hearing officer who rendered the decision. Neither the commissioner nor the court may stay the decision pending decision on appeal. Within fifteen days after receipt of the notice of appeal, the commissioner or the hearing officer who rendered the decision shall file in the office of the clerk of court to which the appeal is taken a certified transcript of the testimony and all other proceedings. It is the record on which the appeal must be determined. No additional evidence may be heard. The court shall affirm the decision of the commissioner or hearing officer unless it finds the evidence insufficient to warrant the conclusion reached by the commissioner or hearing officer. The court may direct that the matter be returned to the commissioner or hearing officer for rehearing and the presentation of additional evidence."

the contents and activities within the garage to the public. There was testimony in the record disclosing that the garage was attached to the house and was part of Lubenow's residence.

We do not believe that Lubenow had a reasonable expectation of privacy with regard to the officer observing from a place he had a right to be the contents and activities within the garage while the garage door was fully open. It does not necessarily follow that he had no privacy expectation as to the intrusion into the garage. We conclude that Lubenow has a reasonable expectation of privacy regarding intrusion into the garage.

Having determined that there was an area which was constitutionally protected from unreasonable search and seizure, we note that the mandate of the Fourth Amendment securing the people against unreasonable searches and seizures requires a warrant unless the search and seizure falls within a recognized exception to the warrant requirement. *State v. Johnson, supra* at 627; *State v. Gagnon,* 207 N.W.2d 260, 263 (N.D.1973); *Katz v. United States, supra.*

■ The emergency doctrine is an exception to the Fourth Amendment requirement of a warrant. *Root v. Gauper,* 438 F.2d 361 (8th Cir.1971); *People v. Mitchell,* 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, *cert. denied,* 426 U.S. 953, 96 S.Ct. 3178, 49 L.Ed.2d 1191 (1976); *see also* La-Fave, *Search and Seizure—A Treatise on the Fourth Amendment* § 6.6 (2d ed. 1987); Mascolo, *The Emergency Doctrine Exception to the Warrant Requirement under the Fourth Amendment,* 22 Buff.L. Rev. 419 (1973).

In *Root v. Gauper, supra* at 364, the Eighth Circuit Court of Appeals discussed the emergency doctrine as follows:

"The emergency doctrine had its origin in a dictum enunciated by Justice Jackson in *Johnson v. United States,* 333 U.S. 10, 14–15, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1947): 'There are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be

contended that a magistrate's warrant for search may be dispensed with.' The Supreme Court later suggested such a situation might occur 'where the officers, passing by on the street, hear a shot and a cry for help and demand entrance in the name of the law.' [Citations omitted]. The doctrine has been applied in many varying circumstances....

"For purposes of the instant case, the emergency or exigency doctrine may be stated as follows: police officers may enter a dwelling without a warrant to render emergency aid and assistance to a person whom they reasonably believe to be in distress and in need of that assistance. In applying this doctrine, two principles must be kept in mind. (1) Since the doctrine is an exception to the ordinary Fourth Amendment requirement of a warrant for entry into a home, the burden of proof is on the state to show that the warrantless entry fell within the exception. [Citations omitted]. (2) An objective standard as to the reasonableness of the officer's belief must be applied."

Former Chief Justice Burger as a circuit judge wrote in *Wayne v. United States,* 318 F.2d 205, 212 (D.C.Cir.), *cert. denied,* 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963), as follows:

"Breaking into a home by force is not illegal if it is reasonable in the circumstances.... But a warrant is not required to break down a door to enter a burning home to rescue occupants or extinguish a fire, to prevent a shooting or to bring emergency aid to an injured person. The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency. Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found. Acting in response to reports of 'dead bodies,' the police may find the 'bodies' to be common drunks, diabetics in shock, or distressed cardiac patients. But the business of policemen and firemen is *to act,* not to speculate or meditate on whether the report is correct.

People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process. Even the apparently dead often are saved by swift police response. A myriad of circumstances could fall within the terms 'exigent circumstances' ... e.g., smoke coming out a window or under a door, the sound of gunfire in a house, threats from the inside to shoot through the door at police, reasonable grounds to believe an injured or seriously ill person is being held within." [Emphasis in original.]

■ In *People v. Mitchell*, 383 N.Y.S.2d at 248, 347 N.E.2d at 609, the guidelines for the application of the emergency doctrine were articulated as follows:

"The basic elements of the [emergency doctrine] exception may be summarized in the following manner:

"(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

"(2) The search must not be primarily motivated by intent to arrest and seize evidence.

"(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched."

The first requirement is that the officer have valid reasons for the belief that an emergency exists. In the instant case, we believe that based upon the information received from Schander and the officer's own observations there existed reasonable grounds to believe that there was an immediate need for his assistance. The second requirement is that the protection of human life or property in danger must be the motivation for the search rather than the desire to gather evidence of a crime or apprehend a criminal suspect. Officer Olson testified at the hearing that at the time entry was made into the garage, it was more for the purpose of rendering aid to a possibly ill person than to look for evidence of a crime. Thus, we believe the officer's primary concern was the health and safety

of Lubenow. Finally, there must be a direct relationship between the area to be searched and the emergency. It is obvious in the instant case that the entry into the garage was directly connected to the emergency.

Accordingly, we believe the officer's initial entry into the garage was valid and proper. We conclude that the search was not unreasonable within the meaning of the Fourth Amendment. Next, we must determine whether or not the arrest was valid and proper.

■ An arrest made without a warrant must be based upon probable cause. *State v. Klevgaard*, 306 N.W.2d 185 (N.D.1981); *State v. Arntz*, 286 N.W.2d 478 (N.D.1979). Probable cause exists when the facts and circumstances within a law enforcement officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in believing that an offense has been or is being committed. *State v. Klevgaard, supra; State v. Phelps*, 286 N.W.2d 472 (N.D.1979).

We note that, as a result of the officer legally being in the garage, additional facts became known to the officer giving him probable cause to arrest Lubenow. Therefore, we conclude the arrest was valid.

For the reasons stated in this opinion, we affirm.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

LEVINE, Justice, concurring specially.

I write to emphasize the limited nature of the emergency exception and the need for its careful, narrow application.

The emergency exception, with the guidelines we have adopted from *People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607 (Ct.App.1976), must be strictly construed to keep the intrusion as limited as possible, so that law enforcement officers are not permitted to invoke the doctrine capriciously to circumvent the warrant requirements to seize evidence they anticipate discovering. Mascolo, *The*

*Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment*, 22 Buffalo L.Rev. 419, 428 (1973). The intrusion may not be a subterfuge for searching for evidence of a crime.

After the emergency has ended, so too does the right to search without a warrant. *See United States v. Mincey*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) [law officers may not engage in investigative search without warrant after emergency has ended]. I am satisfied that Lubenow's apparent physical distress justified the officer's entry in the first instance to offer assistance and that the officer was then in a place he was authorized to be when he observed, in plain view, the signs of Lubenow's intoxication. *Cf. Wibben v. North Dakota State Highway Commissioner*, 413 N.W.2d 329 (N.D.1987). In my view there was probable cause to arrest at that time. Therefore, our approval of the emergency exception in this case does not diminish the protections of the fourth amendment.