**Lester A. SCHWINDT, Petitioner and Appellant,**

v.

**STATE of North Dakota, Respondent and Appellee.**

**Civ. No. 930187.**

Supreme Court of North Dakota.

Jan. 5, 1994.

William G. Heth, Melbye and Heth, Dickinson, for petitioner and appellant.

Tom M. Henning, Asst. State's Atty., Dickinson, for respondent and appellee.

VANDE WALLE, Chief Justice.

Lester Schwindt appealed a judgment dismissing his petition for post-conviction relief. We affirm.

On September 9, 1988, Schwindt was charged with Gross Sexual Imposition, a Class A Felony, in violation of subsection (1)(d) of section 12.1–20–03, N.D.C.C., which proscribes engaging in a "sexual act" with another person under fifteen years old. Under a plea agreement, the complaint was amended to charge Schwindt with violating subsection (2)(a) of section 12.1–20–03, N.D.C.C., a Class B Felony. This subsection proscribes engaging in "sexual contact" with another person under fifteen years old. The district court accepted Schwindt's plea of guilty to the amended charge and, on March

9, 1989, sentenced Schwindt to ten years in the North Dakota State Penitentiary. The court suspended seven and one-half years of the sentence.

After receiving credit for the time he had already served, Schwindt served the remainder of the unsuspended portion of the sentence in the North Dakota State Penitentiary. He was released from prison on May 21, 1990, and placed on supervised probation. Among the conditions of probation were that Schwindt not own or possess any type of firearm, that he refrain from using or possessing alcohol, and that he subject himself to searches of his "person, vehicle, or place of residence by any probation officer at any time of the day or night, with or without a search warrant."

On September 29, 1991, Schwindt was brought by law enforcement officers to the Dickinson, North Dakota, Law Enforcement Center, for detoxification. At the Law Enforcement Center, law enforcement officers took inventory of Schwindt's belongings and found in his billfold two folded pieces of paper. The officers unfolded and read the papers and reported the contents of the notes to Schwindt's probation officer. The notes purportedly made profane reference to the victim of the offense to which Schwindt had pled guilty. Schwindt's probation officer subsequently conducted a search of Schwindt's room at his parent's residence, as well as of the interiors and trunks of two vehicles at that residence. The search revealed a .22 caliber rifle and alcoholic beverages.

On October 21, 1991, the district court found that Schwindt had violated the terms of the probation agreement by using and possessing alcohol and by possessing a firearm. Following an evaluation at the North Dakota State Hospital, Schwindt was sentenced to an additional four and one-half years in the North Dakota State Penitentiary. Schwindt filed a petition for post-conviction relief. After an evidentiary hearing on the petition before the district court, the court ordered dismissal of the petition.

Schwindt argues on appeal that the original sentence imposed upon him was not in accord with his plea agreement. Rather,

Schwindt contends, it was his understanding that the State would recommend no more than five-years probation following incarceration. Schwindt asserts that, because the court imposed a seven and one-half year probationary term, the court was required under Rule 11(d)(4), NDRCrimP, to inform him that the court was not bound by the State's recommendation and that he could withdraw his guilty plea if he chose to do so. Although Schwindt did not, prior to revocation of his probation, challenge the original sentence by way of appeal or post-conviction relief, he contends that his failure to seek such relief at an earlier date was due to ineffective assistance of his appointed counsel, who failed to inform him of the possibility of post-conviction relief.

Schwindt's second assertion is that his probation was improperly revoked, because law enforcement officers violated his constitutional rights when they searched his personal belongings and read his personal papers while he was being held for detoxification. The information found in the notes prompted the law enforcement officers to contact Schwindt's probation officer; the probation officer then conducted a probationary search of Schwindt's room and automobiles and found a firearm and alcoholic beverages. Schwindt appears to contend that the firearm and alcoholic beverages were fruits of the illegal search of his person at the Law Enforcement Center and that the evidence should have been suppressed. Schwindt further contends that the illegally seized notes were improperly relied upon by the district court when it ordered Schwindt to submit to a psychological evaluation at the North Dakota State Hospital.

I

In reviewing Schwindt's petition for post-conviction relief, the district court found that Schwindt agreed to plead guilty, should the Class A Felony charge be reduced to a Class B Felony charge, with the State recommending a ten year sentence with five years suspended for five years following his release. The district court found that the sentence originally imposed upon Schwindt complied with the terms of this agreement.

Because actions for post-conviction relief are essentially civil in nature, findings of fact by the district court will not be disturbed unless clearly erroneous. *State v. Zeno*, 490 N.W.2d 711 (N.D.1992); *Houle v. State*, 482 N.W.2d 24 (N.D.1992). The transcript from the hearing where the terms and conditions of the plea agreement were announced supports the findings of fact by the district court:

"MR. HENNING (Assistant States Attorney): Your Honor, the terms of the plea agreement are that the State will amend the information so as to charge a Class B Felony rather than a Class A Felony, and that the State will be limited in its recommendation—note, I said recommendation—to a recommendation of not more than five years incarceration pursuant to the sentencing in this matter.

THE COURT: Very well. Mr. Gunderson, does that accurately state the terms and conditions of the plea agreement that you entered into on behalf of Mr. Schwindt?

MR. GUNDERSON (Counsel to Schwindt): Yes, it does, with the right for defense here to ask for more lenient terms than what the State asks for.

THE COURT: All right, Mr. Schwindt, were you listening while Mr. Henning explained the terms of the plea agreement?

THE DEFENDANT: Yes, sir, I was.

THE COURT: And are those terms the same as or at least as favorable as you authorized your lawyer to enter into on your behalf?

THE DEFENDANT: Yes, Your Honor.

\*    \*    \*    \*    \*    \*

THE COURT: Through the plea agreement, you receive some promises; number one, that the grade of the offense would be reduced from a Class A Felony to a Class B Felony, and the State has agreed not to recommend more than five years imprisonment. But, except for the promises that are contained in the plea agreement, have any other promises been made to you to get you to plead guilty that I don't know about?

THE DEFENDANT: No, sir, they haven't.

THE COURT: You understand that you have the right to insist on a jury trial and persist in your plea of guilty and insist that the State attempt to prove you guilty proof beyond a reasonable doubt at a trial?

THE DEFENDANT: Yes, sir. I waived my right for a jury trial before.

\*    \*    \*    \*    \*    \*

MR. HENNING: Before the Court accepts a plea to the amended charge, I wish to point out on the record that I stated the agreement somewhat sloppily, and I would ask Mr. Gunderson to confirm that there was no limitation on the State as far as any recommendation of suspended—or, that is, supervised time following his release from a prison sentence.

THE COURT: I'm sorry. I didn't quite get that.

MR. HENNING: I guess, initially, the offer of the State to the Defendant was ten years with five suspended—

THE COURT: Oh, I see.

MR. HENNING: —on the Class A Felony. · Essentially, what we came to is there would be an amendment to a Class B Felony, and the State would be limited to actual incarceration for a period of five years with no limitation on parole, that is, supervised probation time following the release of the Defendant from incarceration. And I wish to make that clear on the record so Mr. Gunderson and I don't have to have a discussion about it later on.

THE COURT: What I don't understand is what you mean by 'with no limitation.'

MR. HENNING: The limitation would be within, essentially, the sentencing guidelines of effectively what I had just said, there could be suspended time put into place for the purpose of monitoring the Defendant following his release from prison.

THE COURT: You mean beyond the five years?

MR. HENNING: Yes.

THE COURT: I see. Is that consistent with your understanding, Mr. Gunderson?

MR. GUNDERSON: Yes, Your Honor, if—the way I understand it, if the State wanted to ask for ten years, only five of it could be incarceration; there could be another five probation.

THE COURT: So what Mr. Henning said to you is understandable and is previously understood?

MR. GUNDERSON: Yes.

THE COURT: Was it understood by you, Mr. Schwindt?

THE DEFENDANT: Yes, it was."

■ We conclude that the district court's factual finding as to the terms of the plea agreement is not clearly erroneous. The court, by sentencing Schwindt to ten years, with actual incarceration of two and one-half years, followed the State's recommendation of a ten-year sentence with a maximum of five years of incarceration. Rule 11(d)(4), applicable only when a court rejects the plea agreement, was not applicable in this instance. *State v. Thompson,* 504 N.W.2d 315 (N.D.1993). Schwindt's contention that he should have been informed that he had the right to withdraw his guilty plea under Rule 11(d)(4) lacks merit.

We also reject Schwindt's contention that he received ineffective assistance of counsel when his counsel failed to inform him of his right to seek relief from the sentence. Claims of ineffective assistance of counsel are examined under a two-part analysis; under the United State's Supreme Court holding in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must show both that "counsel's representation fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068; *Zeno, supra; Houle, supra; Sampson v. State,* 506 N.W.2d 722 (N.D.1993). Here, the record supports the district court's finding that the sentence was in accordance with the plea agreement; there is not a reasonable probability that, had Schwindt previously sought post-conviction relief from the allegedly improper sentence, he would have been successful.

II

■ Schwindt asserts that his constitutional rights were violated when officers searched his personal papers while he was being held for detoxification at the law enforcement center. Because he was not arrested, Schwindt asserts that he could not permissibly be subject to a search by an officer other than by his probation officer. Without reaching the issue of whether the terms of Schwindt's probation authorized a search of Schwindt's person by an officer other than a probation officer, *see State v. Perbix,* 331 N.W.2d 14 (1983), we reject Schwindt's contention that the search was unconstitutional.

Schwindt was detained for detoxification at the Law Enforcement Center in Dickinson under section 5–01–05.1, N.D.C.C. We note that public intoxication is not a crime in this state; rather, a peace officer has discretion to take an "apparently intoxicated" person home, to a hospital, or, if the intoxicated person appears to constitute a threat to anyone, to a jail. N.D.C.C. § 5–01–05.1; *City of Fargo v. Stutlien,* 505 N.W.2d 738 (N.D. 1993); *McCroskey v. Cass County,* 303 N.W.2d 330 (N.D.1981).

In *State v. Gelvin,* 318 N.W.2d 302 (N.D. 1982), we concluded that the inventory search of the wallet of a person held for detoxification was permissible, in light of three policy considerations: (1) protection of the detainee's property while it remains in police custody; (2) protection of the police against claims and disputes over lost or stolen property; (3) protection of the police from danger. We quoted with approval in *Gelvin* the following language of Justice Hansen of the Supreme Court of Wisconsin in his dissent in *State v. McDougal,* 68 Wis.2d 399, 228 N.W.2d 671, 679 (1975):

"For the court-specified purpose of protecting against future claims of impounded property being missing, such inventorying goes to contents, as well as container. To list, '1 purse' or '1 pocketbook' would provide no protection at all to the police against a claim that $100 or $1,000 was later missing from purse or pocketbook."

We conclude that the search of Schwindt's billfold was reasonable for inventory purposes.

Furthermore, it was necessary for the officers to unfold the papers in order to ascertain whether anything was concealed within the folded papers. By so doing, the officers protected themselves against a potential claim by Schwindt that money that had been concealed within the folded papers was later missing. Also, the Constitution does not require the State to "inventory with its eyes closed to the items being inventoried." *State v. Lind,* 322 N.W.2d 826, 836 (N.D.1982). We find no error in the district court's determination that Schwindt's constitutional rights were not violated by the officer's inventory search of the folded papers in Schwindt's billfold.

Moreover, the district court did not revoke Schwindt's probation based on the papers found in Schwindt's billfold. Rather, the court found that Schwindt had violated the terms of his probation by owning or possessing a firearm and alcoholic beverages. These items were discovered by Schwindt's probation officer in Schwindt's residence and automobiles. By executing the probation agreement, Schwindt agreed to searches of his residence and automobiles by probation officers. The search of Schwindt's residence and automobiles was conducted in accordance with the probation agreement; Schwindt does not argue otherwise.

We thus conclude that the original sentence imposed upon Schwindt was in accord with the terms of his plea agreement and that the district court did not err by revoking Schwindt's probation.

The judgment of the district court, dismissing Schwindt's petition for post-conviction relief, is affirmed.

VANDE WALLE, C.J., and SANDSTROM, NEUMANN, LEVINE and MESCHKE, JJ., concur.