2014 ND 165

### STATE of North Dakota, Plaintiff and Appellee

v.

### Tamri Dawn STEWART, Defendant and Appellant.

### No. 20130374.

Supreme Court of North Dakota.

July 31, 2014.

Brian D. Grosinger, Assistant State's Attorney, Mandan, N.D., for plaintiff and appellee.

James A. Teigland (argued), Nicholas D. Thornton (appeared), Fargo, N.D., and Erin M. Conroy (on brief), Bottineau, N.D., for defendant and appellant.

SANDSTROM, Justice.

[¶ 1] Tamri Dawn Stewart appeals from a criminal judgment entered on a conditional plea of guilty to class C felony abuse or neglect of a child, reserving the right to challenge the district court's deni-

al of her motion to suppress evidence. Because the facts in this case do not support the district court's decision that a police officer's entry into Stewart's home was justified by the emergency exception to the warrant requirement, we reverse the criminal judgment and remand to allow Stewart to withdraw her guilty plea.

## I

[¶ 2] At about 5:30 p.m. on March 9, 2013, a police officer went to Parktown Trailer Park in Mandan in response to a call from a resident about the welfare of Stewart's dog. Stewart's neighbors were caring for the dog and told the officer that Stewart was working and her 10–year–old daughter was alone in Stewart's trailer home with a younger boy and that Stewart would not be returning home until 9 p.m. The couple also told the officer the trailer was in "horrible condition," "there were several hundred pieces of dog poop in the house, and it was not fit for a child."

[¶ 3] The officer went to Stewart's home. The officer testified he did "not necessarily" anticipate he would be required to take action when he approached the home and found "nothing emergent about the conditions." The officer used the term "emergent" to mean "an emergency condition to go in the house." The officer knocked on the door. The temperature was in the 30s and it was damp and windy. According to the officer, Stewart's daughter answered, "[a]nd she came outside, opened the door just far enough to sneak out, and close[d] the door behind her immediately, bang." Stewart's daughter was wearing a short-sleeved t-shirt without a coat. Although her clothes were dirty, her hair was unkempt and her mouth was slightly dirty, the officer testified the child's appearance did not concern him because "I've seen dirty kids before." The officer told Stewart's daughter why he

was there and asked if he could come inside the trailer to talk to her, but she said "no." Stewart's daughter told the officer she was with a friend whose parents were watching her while her mother was at work. Stewart's daughter told him she and her mother were the only persons living at the home and the officer noted the child "sounded very mentally and emotionally mature for being ten years old."

[¶ 4] The officer returned to his vehicle and phoned a police lieutenant and Stewart, who was at work. The officer told Stewart why he was at her house and asked for permission to look through the home, but Stewart said "no" and explained "she did not want me looking through her house without her being there if I didn't have a warrant." Stewart was unable to give the officer the name or address of the person who was supposed to be watching her child while she was at work.

[¶ 5] After the officer had been in his vehicle between ten to twelve minutes, he returned to Stewart's residence and knocked on the door. Stewart's daughter again answered, stepped outside without a coat and closed the door. The officer asked her whether there was an adult in the home, whether she had a phone for emergencies, and when she had last eaten. He also questioned her about the conditions in the home. The officer testified:

> And she had very clear answers for me that I took to be in my report a cover story. Just simple, quick answers to make the police officer go away. The concerns about the dog poop was, there was a problem, we got rid of the dog that was pooping in the house. So the problem is not there anymore. I clean the house. My mom helps me when she's not working because she works a lot. Stuff like that. Just quick answers so the cop would go away satisfied.

[¶ 6] After several minutes of talking on the porch, the officer saw Stewart's daughter was getting cold and asked her, " 'Can we just step inside your door so we can talk?' " Stewart's daughter allowed the officer inside, where he noticed an intense odor of dog feces and urine and found the home littered with garbage and dog feces. The officer called Social Services to remove Stewart's daughter from the home. The officer took the younger child home to his mother and learned the mother did not know who was supposed to be watching Stewart's daughter.

[¶ 7] Stewart was charged with class C felony abuse or neglect of a child in violation of N.D.C.C. § 14–09–22. Stewart moved to suppress the evidence, arguing the officer's warrantless entry into her home was illegal under the Fourth Amendment. During the hearing on the motion, the officer testified:

Q. Okay. You went back to the door and second time asked the child to come in; correct?

A. Yes.

Q. Okay. And at that time did you think she understood what it meant to consent to come into the home?

A. Yes.

Q. Okay. It wasn't you showing authority in your opinion?

A. No.

Q. Okay.

A. No, the first time around she very clearly told me no.

Q. Okay.

A. The second time she was cold.

Q. So she was mature enough to consent in your opinion but not mature enough to stay home alone?

A. The reason she was taken was the conditions, not whether she was mature enough to be home alone.

. . . .

Q. At the time you had asked now three times if you could have consent to enter the home. So you were fully aware that you needed some type of consent to enter the home; correct?

A. Absolutely. I'd not found an emergent condition yet.

The State did not attempt to justify the warrantless entry under the consent exception, and the district court made no findings about consent. Rather, the State relied on theories of "exigent circumstances," "community caretaker," and "[i]nevitable discovery" to justify the officer's warrantless entry.

[¶ 8] The district court denied Stewart's suppression motion, reasoning:

Officer Poppe's presence at the Defendant's home was not to investigate possible criminal action, but to do a check on the welfare of one and perhaps two young children who were reportedly left unattended in a filthy home without adult supervision for several hours. After his initial encounter with [Stewart's daughter] and [the younger child], Officer Poppe's personal observations confirmed that [Stewart's daughter] was home without any adult supervision, that her mother was at work and not expected at home for several hours, and that [Stewart's daughter] appeared very dirty and unkempt. Based upon all of those personal observations, Officer Poppe had reasonable grounds to believe that further assessment was necessary to determine if the 10 year old child was in any danger based on the circumstances.

Officer Poppe's entrance in the home was not motivated by an intent to discover evidence of any crime, but instead by an intent to protect the child from continuing to stand outside the home,

without a coat, in near freezing temperatures.

. . . .

Officer Poppe was acting upon reliable information from identified sources and his own personal observations and his conversations with [Stewart's daughter] and the Defendant, all of which provided a reasonable basis, approximating probable cause, to associate the emergency with the Defendant's home.

The Court hereby finds that Officer Poppe's observations of and entrance into the home, based upon his concern for and caretaking responsibilities for the ten-year-old child amounted to an exigent circumstance, which is an exception to the Fourth Amendment.

Stewart entered a conditional plea of guilty under N.D.R.Crim.P. 11(a)(2), reserving her right to appeal from the denial of her motion to suppress.

[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(b). This Court has jurisdiction under N.D. Const. art. VI, § 2, and N.D.C.C. § 29–28–06.

## II

[¶ 10] Stewart argues the district court erred in denying her motion to suppress.

[¶ 11] Our standard for reviewing a district court's decision on a motion to suppress is well established:

In reviewing a district court decision on a motion to suppress, we give deference to the district court's findings of fact and we resolve conflicts in testimony in favor of affirmance. *State v. Tognotti*, 2003 ND 99, ¶ 5, 663 N.W.2d 642. We "will not reverse a district court decision on a motion to suppress ... if there is sufficient competent evidence capable of supporting the court's findings, and if the decision is not contrary to the manifest weight of the evidence." *State v. Gefroh*, 2011 ND 153, ¶ 7, 801 N.W.2d 429. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law. *Id.*

*State v. Reis*, 2014 ND 30, ¶ 8, 842 N.W.2d 845; *see also City of Fargo v. Thompson*, 520 N.W.2d 578, 581 (N.D.1994).

[¶ 12] The Fourth Amendment provides protection from unreasonable searches and seizures, and warrantless searches inside a person's home are presumptively unreasonable. *See Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); *State v. Mitzel*, 2004 ND 157, ¶ 11, 685 N.W.2d 120. Warrantless searches inside a home are not unreasonable, however, if the search falls under one of the exceptions to the search warrant requirement. *Mitzel*, at ¶ 11. Exigent circumstances and the community caretaker doctrine are exceptions to the warrant requirement. *See id.* at ¶ 19; *State v. Keilen*, 2002 ND 133, ¶ 13, 649 N.W.2d 224. Six years ago, a majority of this Court said the "community caretaking function does not encompass dwelling places." *State v. Gill*, 2008 ND 152, ¶ 23, 755 N.W.2d 454. By this, we do not mean there can never be any combination of circumstances—absent probable cause to believe a crime has been or is about to be committed—that would justify law enforcement officers', firefighters', or other government actors' unconsented warrantless entry into a residence. But people have a much greater expectation of and right to privacy in their homes than in their automobiles; *see Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); and community caretaking alone would not justify entry here.

[¶ 13]   Exigent circumstances is also referred to as the "emergency exception" to the warrant requirement. *State v. Matthews*, 2003 ND 108, ¶ 27, 665 N.W.2d 28. In *State v. Morin*, 2012 ND 75, ¶ 9, 815 N.W.2d 229 (internal citation omitted), this Court explained:

> Three requirements must be met to apply the emergency exception:
>
> (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.
>
> (2) The search must not be primarily motivated by intent to arrest and seize evidence.
>
> (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

[¶ 14]   The information from the neighbors about the condition of Stewart's home may have provided the officer with probable cause to obtain a search warrant. The officer testified it would have taken him "an hour, hour and a half" to obtain a warrant "[i]f a warrant is issued." The record does not, however, support a warrantless entry into Stewart's home based on an immediate need to protect life or property. Indeed, the officer's actions and his own testimony belie any notion of immediacy associated with the situation. The officer found nothing that caused him concern when he first approached the home. The appearance of Stewart's daughter did not alarm him, nor did he believe the child was not mature enough to be left in the home alone. She denied him permission to enter. The officer left the home for a short time. When he returned to the home a second time, the only thing changed was that Stewart also had refused to give the officer permission to make a warrantless entry into her home. The officer gained entry to the home during the second encounter with the child only because "she was cold." The officer further testified he needed the child's consent to enter the home because "I'd not found an emergent condition yet." The circumstances here do not satisfy the requirements to establish exigent circumstances. *See, e.g.*, *Morin*, 2012 ND 75, ¶ 10, 815 N.W.2d 229 (exigent circumstances existed for warrantless entry of home where intoxicated and angry defendant had assaulted girlfriend and locked himself inside home with three young children).

[¶ 15]   We conclude there is not sufficient competent evidence capable of supporting the district court's decision that exigent circumstances existed to justify the officer's warrantless entry into Stewart's home.

### III

[¶ 16]   The State argues the district court's decision can nevertheless be affirmed under the inevitable discovery doctrine.

[¶ 17]   " 'The inevitable-discovery doctrine provides that evidence obtained from information procured in an unlawful search or seizure is admissible under the fruit-of-the-poisonous-tree doctrine if the evidence would inevitably have been discovered without the unlawful conduct.' " *State v. Smith*, 2005 ND 21, ¶ 31, 691 N.W.2d 203 (quoting *State v. Gregg*, 2000 ND 154, ¶ 51, 615 N.W.2d 515). In *State v. Phelps*, 297 N.W.2d 769, 775 (N.D. 1980) (footnote omitted), this Court said:

> In order to apply the inevitable-discovery theory, the State must meet a two-part test. First, use of the doctrine is permitted only when the police have not acted in bad faith to accelerate the discovery of the evidence in question. Second, the State must prove that the evidence would have been found without the unlawful activity and must show how

the discovery of the evidence would have occurred.

"The first criteria is necessary because one purpose of the exclusionary rule is to prevent and deter shortcuts in law enforcement." *State v. Johnson*, 301 N.W.2d 625, 629 (N.D.1981). "If the inevitable discovery theory applied when a shortcut was taken, ... the net result would be that the magistrate's determination of probable cause as required by the fourth amendment would be eliminated for all practical purposes." *Id.*

[¶ 18] The State argues the inevitable discovery doctrine applies here because the officer had probable cause and "acted in good faith, out of concern for the child, when he continued rather than seeking a search warrant." The gist of the State's argument appears to be the warrantless search is legal because the officer had probable cause to obtain a warrant. This rationale turns the warrant requirement on its head. The inevitable discovery doctrine does not apply when the warrant requirement is simply bypassed without exigent circumstances. *See Johnson*, 301 N.W.2d at 629.

[¶ 19] We conclude the inevitable discovery doctrine does not apply in this case.

### IV

[¶ 20] Because the officer's warrantless entry into Stewart's home violated the Fourth Amendment, we reverse the criminal judgment and remand to allow Stewart to withdraw her guilty plea.

[¶ 21] CAROL RONNING KAPSNER, LISA FAIR McEVERS, and DANIEL J. CROTHERS, JJ., concur.

GERALD W. VANDE WALLE, C.J. concurs in the result.