2017 ND 177

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Rodney Harold FRIESZ, Defendant and Appellant**

No. 20160147

Supreme Court of North Dakota.

Filed 7/12/2017

Brian D. Grosinger (argued) and Gabrielle J. Goter (on brief), Assistant State's Attorneys, Mandan, N.D., for plaintiff and appellee.

Monty G. Mertz, Fargo, N.D., for defendant and appellant.

Tufte, Justice.

[¶ 1] Rodney Friesz appeals from a criminal judgment entered after a jury found him guilty of manslaughter and arson. We conclude the district court did not err in denying his motion to suppress evidence and sufficient evidence exists to sustain his convictions for manslaughter and arson. We affirm Friesz's convictions. We remand, however, for the district court to correct a clerical error in the criminal judgment because the judgment does not clearly state the jury entered a verdict of guilty to the offenses.

I

[¶ 2] On October 9, 2014, Friesz shot Geno Jassmann in a home in Mandan, causing his death. While Jassmann was still breathing, Friesz lit the home on fire and left. Friesz was subsequently charged with murder, a class AA felony, and arson, a class B felony, alleging Friesz had intentionally caused the death of another human being and had willfully started the fire.

[¶ 3] On the day of the shooting, police and firefighters responded to a report of a fire. Mandan police officer Riley Gentzkow was dispatched at about 2 p.m. and was the first officer on the scene. Gentzkow testified he did not see any signs of fire on arriving, but could smell and see smoke coming from the roof line as he got closer.

Gentzkow knocked and attempted to open the front door. The door was locked, and no one answered. Concerned someone might be inside or the home might go up in flames, Gentzkow kicked in the door, and black smoke poured out of the home.

[¶ 4] Firefighters arrived on the scene to contain the fire, and Gentzkow secured the perimeter while the fire was extinguished. After firefighters had informed him a dead body was inside on the living room couch, Gentzkow entered about three feet into the home and observed the dead body ten to fifteen feet away. He exited the home and informed his supervisor, Mandan police officer Dan Poppe, regarding what he had seen.

[¶ 5] Mandan Fire Department Captain Mike Hanson arrived on the scene after the first engine arrived and two firefighters had made entry into the home. Hanson testified at trial the fire was a small, smoldering fire that did a lot of smoke damage, in addition to some obvious flame damage. The two firefighters reported to Hanson there were firearms inside and a deceased person on the living room couch. When Hanson entered, he saw a rifle leaning up against the wall with the barrel pointed upwards. Hanson testified he was concerned the rifle could have been knocked over and accidentally discharged. He testified he removed the firearm from the home and handed it to a uniformed police officer outside the door, later identified as Officer Poppe, who eventually turned it over to Officer Jay Grueble.

[¶ 6] Officer Grueble, a Mandan police sergeant at that time, testified that when he arrived at the scene, Hanson told him a dead body was inside. Grueble, Hanson, and Mandan Detective April Jose entered the residence to view the body. Grueble sent Jose to obtain a search warrant. Grueble was also informed the residence belonged to Todd Friesz, Rodney Friesz's brother. Rodney Friesz had also lived in his brother's home at some point. Grueble spoke with Rodney Friesz, who was present at the scene with a group of about eight to ten people outside the front of the residence and was smoking a cigarette.

[¶ 7] Friesz told Grueble he was there to pick up a white Cadillac parked out front and the keys were in the residence. Friesz then said he was there to pick up a pickup and to move some of his property to a residence in Bismarck where he had been living. Grueble testified his conversation with Friesz was "confusing," Friesz was hard to track, and his story of why he was there was not making sense. Grueble grew suspicious of Friesz's explanations for the fire. He testified Friesz was calm, not upset about anything, not excited, and did not appear to be "tweaking" or under the influence of methamphetamine during his conversation with him.

[¶ 8] Morton County Detective David Bjorndahl testified at trial that he had seen Friesz earlier in the day driving a white Cadillac while conducting surveillance in another matter. Bjorndahl had also spoken with Friesz at the scene, noting Friesz's answers had not made sense and it did not seem significant to Friesz that his brother's house was on fire. Bjorndahl testified that Friesz seemed calm, did not wonder whether anyone was inside or hurt, and was not concerned about any of his own possessions that might be in the home. Bjorndahl did not believe Friesz was heavily intoxicated, nor did Friesz show other indicia of heavy intoxication. He testified that Friesz said he had consumed methamphetamine that morning and the day before.

[¶ 9] Friesz initially said he had not been in the home; however, Bjorndahl testified that after he told Friesz a dead body was inside, Friesz eventually told him the dead person was "Geno." Bjorndahl testified

Friesz told him that he had shot Geno. Friesz said he shot Geno in self-defense, also stating Geno had tried to stab him with a knife. Although Friesz also initially denied knowledge of the fire to Bjorndahl, he subsequently admitted starting the fire by getting gasoline from outside and lighting the fire with a torch lighter. An audio recording of the conversation between Friesz and Bjorndahl was admitted and played at trial, in addition to two later audio and video recordings of law enforcement interviews with Friesz at the Mandan Law Enforcement Center. During the interviews, Friesz admitted Jassmann was still breathing when he started the fire.

[¶ 10] Among three vehicles Grueble searched with the search warrant was a white Cadillac registered to Friesz. Grueble found a black cap ring from a red gasoline can and a black cigarette lighter on the front passenger seat, and a receipt from a Mandan gas station dated the morning of October 9 on the floor of the front passenger compartment. Grueble testified he had seen a red gasoline can earlier in Todd Friesz's residence that did not have a cap on it. Grueble also verified Rodney Friesz had received the receipt indicating the purchase of a container of lighter fluid.

[¶ 11] Dr. William Massello, a forensic pathologist and State forensic examiner, performed an autopsy on Jassmann in October 2014. Massello issued a report of death, an autopsy report, and toxicology reports or reports of studies for drugs and alcohol. Massello testified at trial that the cause of Jassmann's death was a gunshot wound to the head with a contributory cause of smoke inhalation. Massello further explained that the wound to Jassmann's brain would not have been survivable. He testified that soot found in Jassmann's trachea would have resulted from

his continuing to breathe for a short time before he died.

[¶ 12] Before trial, Friesz moved the district court to suppress all evidence obtained from the home. He argued the initial search was a seizure of property and was illegal because the search was conducted without a warrant and no exception to the warrant requirement applied. In June 2015, the court held a suppression hearing and subsequently denied his motion. In February 2016, the court held a jury trial. Friesz moved for a judgment of acquittal under N.D.R.Crim.P. 29 on both counts at the close of the State's case and again at the close of all evidence. The court denied his motions. The jury found Friesz guilty of the lesser-included offense of manslaughter, a class B felony, and guilty of arson. In April 2016, Friesz was sentenced, and a criminal judgment was entered.

II

[¶ 13] Friesz argues the district court erred in denying his motion to suppress, because the initial search of the residence and seizure of property was illegal.

[¶ 14] Our standard for reviewing the district court's decision denying a suppression motion is well-established:

> [T]his Court defers to the district court's findings of fact and resolves conflicts in testimony in favor of affirmance. This Court will affirm a district court decision regarding a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Knox*, 2016 ND 15, ¶ 6, 873 N.W.2d 664 (quotation marks omitted).

[¶ 15] Under our federal and state constitutions, individuals are protected from unreasonable searches and seizures in their homes. U.S. Const. amend. IV; N.D. Const. art. I, § 8; *see also State v. Karna*, 2016 ND 232, ¶ 7, 887 N.W.2d 549. Warrantless, non-consensual searches and seizures made inside a home are presumptively unreasonable, unless an exception to the warrant requirement applies. *Karna*, at ¶ 7; *State v. Hart*, 2014 ND 4, ¶ 13, 841 N.W.2d 735. In a criminal proceeding, "[e]vidence seized from a warrantless search, when no recognized exception to the warrant requirement exists, must be suppressed under the exclusionary rule." *Hart*, at ¶ 13. "[A]ll evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." *Id.* (quoting *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)).

[¶ 16] Here, Friesz moved the district court to suppress all evidence obtained from the home. Although Rodney Friesz had previously been living in his brother Todd's home, the State argued in responding to the motion that Friesz lacked standing to assert Fourth Amendment rights because he no longer had permission to be in the home at the time of the incident. However, the district court noted Todd Friesz testified at the suppression hearing that Rodney Friesz had his permission to be in the trailer to remove his possessions and had until the end of October 2014 to do so. The district court therefore assumed for purposes of deciding the suppression motion that Rodney Friesz had standing to assert privacy rights under the Fourth Amendment. For purposes of addressing Friesz's arguments on appeal, we also assume Friesz had standing.

[¶ 17] In denying Friesz's motion to suppress evidence, the district court focused its analysis on the seizure of the rifle that had been leaning against the wall and on the officers' entry into the home to view the dead body, both events having occurred before the search warrant had been obtained. The court applied the emergency exception to the warrant requirement to allow the removal of the rifle and held the inevitable discovery doctrine applied regarding the officers' viewing of the body.

### A

[¶ 18] "One well-recognized exception to the warrant requirement applies when ' "the exigencies of the situation" make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.' " *Hart*, 2014 ND 4, ¶ 14, 841 N.W.2d 735 (quoting *Kentucky v. King*, 563 U.S. 452, 460, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011)); *see also Mincey v. Arizona*, 437 U.S. 385, 394, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). We have also explained exigent circumstances include "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *Karna*, 2016 ND 232, ¶ 7, 887 N.W.2d 549 (quoting *State v. Nagel*, 308 N.W.2d 539, 543 (N.D. 1981)). We have said "the emergency doctrine does not require probable cause but must be actually motivated by a perceived need to render aid or assistance." *State v. Matthews*, 2003 ND 108, ¶ 13, 665 N.W.2d 28 (quotation marks omitted).

[¶ 19] We have provided the following three-part test to decide whether evidence is admissible under the emergency exception:

(1) The police must have reasonable grounds to believe that there is an

emergency at hand and an immediate need for their assistance for the protection of life or property.

(2) The search must not be primarily motivated by intent to arrest and seize evidence.

(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

*Karna*, 2016 ND 232, ¶ 8, 887 N.W.2d 549 (quoting *State v. Nelson*, 2005 ND 11, ¶ 12, 691 N.W.2d 218); *see also Lubenow v. N.D. State Highway Comm'r*, 438 N.W.2d 528, 533 (N.D. 1989). An officer's reasonable belief that an emergency existed is ascertained under an objective standard, and is satisfied "if the facts demonstrate the officer had an objectively reasonable belief that a situation involved a serious threat to an individual's health." *Karna*, at ¶ 9.

[¶ 20] Friesz argues there was no exigency or emergency requiring an immediate search without a warrant, no risk of destruction of evidence because the fire department had extinguished the fire, and no risk to human life because no other individuals were inside and the victim was obviously deceased. He asserts law enforcement officers had secured the perimeter, so there was no reasonable possibility that firearms or other evidence inside the home would be lost or destroyed. Relying on *Michigan v. Clifford*, 464 U.S. 287, 104 S.Ct. 641, 78 L.Ed.2d 477 (1984), Friesz argues the damage to the residence was relatively minor and did not defeat his expectation of privacy, and therefore no exigency existed. He contends that no exigency or other exception to the warrant requirement existed and that law enforcement conducted an illegal search and illegally seized the firearm.

[¶ 21] In *Clifford*, 464 U.S. at 292, 104 S.Ct. 641, the Supreme Court dis-

cussed privacy interests in fire-damaged property:

The constitutionality of warrantless and nonconsensual entries onto fire-damaged premises, therefore, normally turns on several factors: whether there are legitimate privacy interests in the fire-damaged property that are protected by the Fourth Amendment; whether exigent circumstances justify the government intrusion regardless of any reasonable expectations of privacy; and, whether the object of the search is to determine the cause of fire or to gather evidence of criminal activity.

The Court said that the test is an objective one and that "[p]rivacy expectations will vary with the type of property, the amount of fire damage, the prior and continued use of the premises, and in some cases the owner's efforts to secure it against intruders." *Id.* Thus, when a reasonable expectation of privacy remains in fire-damaged property, "additional investigations begun after the fire has been extinguished and fire and police officials have left the scene, generally must be made pursuant to a warrant or the identification of some new exigency." *Id.* at 293, 104 S.Ct. 641.

[¶ 22] The Supreme Court also acknowledged, however, that "[a] burning building of course creates an exigency that justifies a warrantless entry by fire officials to fight the blaze[, and] . . . once in the building, officials need no warrant to <u>remain</u> for 'a reasonable time to investigate the cause of a blaze after it has been extinguished.' " *Id.* (footnote omitted) (quoting *Michigan v. Tyler*, 436 U.S. 499, 510, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)). Moreover, we also note the Court in *Mincey*, 437 U.S. at 392-93, 98 S.Ct. 2408, explained that "when the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premis-

es. ... And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." *See also Michigan v. Tyler*, 436 U.S. 499, 509-510, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978).

[¶ 23] Here the district court found that an emergency was ongoing when Captain Hanson removed the rifle from the scene of the fire for safekeeping and protection of others. The court found that when Hanson entered the home to assist the firefighters with ventilation, he observed a rifle leaning up against the wall in the living room and removed the rifle out of concern for the first responders' safety. The court specifically found that the home at that time was filled with smoke and firefighters were still entering the home. The court found Hanson removed the rifle from the home and gave it to Officer Poppe, who was standing outside, so no one would accidentally discharge the rifle. The court also emphasized that Poppe did not search the home, but rather that the emergency was ongoing when Hanson removed the rifle. Hanson's testimony supports the district court's finding that removing the rifle was primarily motivated by concern for the safety of the first responders.

[¶ 24] Under these circumstances, we conclude it was reasonable for the district court to find an emergency was ongoing and hold evidence of the rifle was admissible under the emergency exception. We therefore conclude the court did not err in applying the emergency exception to the warrant requirement.

B

[¶ 25] Friesz contends the district court erred in applying the inevitable discovery doctrine to evidence of the deceased body.

[¶ 26] The inevitable discovery doctrine "establishes that evidence derived from information obtained in an unlawful search is not inadmissible under the fruit-of-the-poisonous-tree doctrine where it is shown that the evidence would have been gained even without the unlawful action." *State v. Phelps*, 297 N.W.2d 769, 774 (N.D. 1980). In *Phelps*, at 775, this Court adopted a two-part test to decide when the State may rely on the inevitable discovery exception to the exclusionary rule:

First, use of the doctrine is permitted only when the police have not acted in bad faith to accelerate the discovery of the evidence in question. Second, the State must prove that the evidence would have been found without the unlawful activity and must show how the discovery of the evidence would have occurred.

"The first criteria is necessary because one purpose of the exclusionary rule is to prevent and deter shortcuts in law enforcement." *State v. Johnson*, 301 N.W.2d 625, 629 (N.D. 1981). Regarding the test's second criteria, "the United States Supreme Court has held evidence obtained because of unlawful police conduct may be admissible if the State proves by a preponderance of the evidence that the challenged evidence would have otherwise been discovered by lawful means in the course of the investigation." *State v. Asbach*, 2015 ND 280, ¶ 16, 871 N.W.2d 820 (citing *State v. Olson*, 1998 ND 41, ¶ 16, 575 N.W.2d 649; *Nix v. Williams*, 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)).

[¶ 27] Friesz argues the police officers in this case did not act in good faith, again based on the circumstances surrounding both the seizure of the rifle and officers' entry into the residence to view the body. He asserts the police had already received information there was a deceased body and firearms in the home, had received infor-

mation the fire was contained, and had secured a perimeter around the residence. He argues there was no other reason to enter the home, to conduct a search, or to seize evidence without a warrant.

[¶ 28] Relying on *State v. Stewart*, 2014 ND 165, ¶ 18, 851 N.W.2d 153, and *Johnson*, 301 N.W.2d at 629, Friesz contends that law enforcement may not act in bad faith or take shortcuts to hasten the seizure of evidence and that the existence of probable cause does not negate the warrant requirement. He asserts the information concerning the deceased body in the living room did not allow police officers to enter the home to search and seize evidence. He argues law enforcement in this case acted in bad faith and the inevitable discovery doctrine is inapplicable.

[¶ 29] We believe Friesz's reliance on *Stewart* and *Johnson*, both of which held the inevitable discovery doctrine did not apply, is unavailing because both cases are factually distinguishable from the present case. In *Johnson*, 301 N.W.2d at 629, this Court held a police officer's warrantless seizure of an allegedly stolen air compressor from an area outside the defendant's home was not justified by exigent circumstances. *Id.* The court reasoned the compressor itself was not dangerous or plainly contraband; it was not obvious to neighbors or their invitees that it was stolen; and, although the compressor easily could be moved, police officers waited days to seize it after being informed of its location. *Id.* Further, the defendant was not present when a police officer and theft victim entered land leased by the defendant to determine the air compressor's ownership. *Id.* The court therefore held the officer's shortcut in accelerating discovery of the compressor without a search warrant was not justified. *Id.*

[¶ 30] In *Stewart*, 2014 ND 165, ¶¶ 13-19, 851 N.W.2d 153, this Court also held entry into the defendant's home was not justified by exigent circumstances and refused to apply the inevitable discovery doctrine. A police officer had gone to the defendant's home after neighbors reported the defendant was working and would not be home until 9 p.m., her 10-year old daughter was home alone with a younger boy, and the living conditions in the home were "horrible." *Id.* at ¶ 2. Upon going to the home, the officer encountered a child who refused to let him inside. *Id.* at ¶ 3. The officer returned to his vehicle and called the defendant, who also refused permission for him to enter the home. *Id.* at ¶ 4. When the officer returned to the home a second time, he gained entry after the second encounter only because the child was outside and "was cold." *Id.* at ¶¶ 6, 14. Although the information from the neighbors may have provided probable cause to obtain a search warrant, this Court held the record did not show warrantless entry into the defendant's home based on any immediate need to protect life or property. *Id.* at ¶ 14.

[¶ 31] Unlike either *Stewart* or *Johnson*, however, the police officer's entry into the home in this case did not accelerate discovery of evidence, because the entry was limited to just inside the threshold and to confirm the presence of the dead body, which was the information the officers had already received from firefighters. Moreover, even assuming the police officers' limited entry into the home to view the body was unlawful, the body had already been discovered during the lawful entry of the firefighters. A detective testified that she had had false reports in the past and entered only to confirm the existence of the dead body before applying for a search warrant.

[¶ 32] Here the district court found the officers acted in good faith because they had crossed the entryway's threshold only

two to three feet to view the body and then immediately left the home and applied for a search warrant. The entry was not for purposes of accelerating discovery of evidence but rather to confirm the dead body's existence, which was already known. The officers testified that no evidence was removed and they made no investigation of the scene beyond observation of the body across the room. Both the firefighters' observations and the officers' visual confirmation were used to support probable cause for a search warrant. The court held the officers could have relied on the reports from the firefighters and inevitably would have been granted a search warrant based on those reports alone without their visual confirmation. Moreover, the court found a valid search warrant was executed and evidence of the deceased body was lawfully obtained through execution of that warrant. We agree with the district court's analysis.

[¶ 33] On the basis of our review of the record, we conclude the district court did not err in applying the inevitable discovery doctrine. We conclude the court did not err in denying Friesz's motion to suppress.

### III

[¶ 34] Friesz argues on appeal that the evidence was insufficient to support his convictions of manslaughter and arson. In reviewing a sufficiency of the evidence challenge, we have explained:

> When the sufficiency of evidence to support a criminal conviction is challenged, this Court merely reviews the record to determine if there is competent evidence allowing the [trier of fact] to draw an inference reasonably tending to prove guilt and fairly warranting a conviction. The defendant bears the burden of showing the evidence reveals no reasonable inference of guilt when viewed in the light most favorable to the verdict.

> When considering insufficiency of the evidence, we will not reweigh conflicting evidence or judge the credibility of witnesses.... A [trier of fact] may find a defendant guilty even though evidence exists which, if believed, could lead to a verdict of not guilty.

*State v. Romero*, 2013 ND 77, ¶ 24, 830 N.W.2d 586 (quoting *State v. Bruce*, 2012 ND 140, ¶ 16, 818 N.W.2d 747). "When the verdict is attacked and the evidence is legally sufficient to sustain the verdict, we will not disturb the verdict and judgment even though the trial included conflicting evidence and testimony." *Id.* (quoting *State v. Nakvinda*, 2011 ND 217, ¶ 12, 807 N.W.2d 204).

### A

[¶ 35] Friesz argues there is insufficient evidence on the element that he did not act in self-defense and he should have been found not guilty based on self-defense.

[¶ 36] At trial, the district court instructed the jury on murder, on the lesser-included offenses of manslaughter and negligent homicide, and on self-defense. The court gave the following jury instructions for self-defense:

### SELF-DEFENSE
#### (After Provocation)

A person is justified in using force upon another to defend oneself against danger of imminent unlawful bodily injury, sexual assault, or detention by the other person. One is not justified in using force if one causes bodily injury or death to the other person and had intentionally provoked the danger defended against, or has entered into mutual combat with another person or is the initial aggressor, unless resisting force that is clearly excessive in the circumstances.

A person's use of defensive force is justified if, after one withdraws from an encounter and has indicated to the other

person that one has done so, the other person nevertheless continues or menaces unlawful action.

### SELF-DEFENSE
#### (Reasonableness of Accused's Belief)

The Defendant's conduct is to be judged by what the Defendant in good faith honestly believed and had reasonable grounds to believe was necessary to avoid apprehended death or great bodily injury.

### LIMITS ON USE OF EXCESSIVE OR DEADLY FORCE

A person is not justified in using more force than is necessary and appropriate under the circumstances.

Deadly force is justified:.

If it is used in lawful self-defense, or in lawful defense of others and the force is necessary to protect the actor or anyone else against death, serious bodily injury, or the commission of a felony involving violence.

The use of deadly force is not justified if it can be avoided, with safety to the actor and others, by retreat or other conduct involving minimal interference with the freedom of the person menaced. The use of deadly force is not justified unless the person honestly and reasonably believed that safe retreat from the attacker was not possible.

[¶ 37]. Friesz concedes on appeal that the district court correctly instructed the jury on self-defense. "Unchallenged jury instructions become the law of the case." *State v. Rogers*, 2007 ND 68, ¶ 10, 730 N.W.2d 859 (citation omitted). Friesz argues, however, the record supports only that "his belief that his use of defensive force was necessary to prevent imminent unlawful harm was reasonable, not reckless or negligent, and a rational jury could not find otherwise." *See Romero*, 2013 ND 77, ¶¶ 17-22, 830 N.W.2d 586; *State v.*

*Leidholm*, 334. N.W.2d 811, 816-19 (N.D. 1983).

[¶ 38] In this case, Friesz does not dispute that he shot the victim, but he contends he did so in self-defense because the victim had tried to stab him. Evidence was presented at trial, including Friesz's admissions to police, that the victim was still breathing when he started the fire. Friesz contends, however, the jury "could only conclude" from the record that he believed the victim and others were planning to kill him that day. He argues the jury should have found him not guilty by reason of self-defense by focusing only on what he believed and that his belief was reasonable.

[¶ 39] The State responds that if Friesz had actually been in fear for his life, he would have fled instead of lighting the home on fire. The State also asserts the evidence shows the victim was not armed and was not physically a threat to Friesz. Because no imminent threat existed to have allowed the use of lethal force, the State asserts adequate evidence supports the manslaughter verdict.

[¶ 40] On our review of the record, we conclude sufficient evidence supports the jury's verdict finding him guilty of manslaughter. Although Friesz contends on appeal that the evidence "only" shows he believed the victim and others were planning on killing him, conflicting evidence exists regarding whether he "in good faith honestly believed and had reasonable grounds to believe" his conduct was necessary. Specifically, the evidence at trial showed that Friesz told different versions of the events, that no knife was found in the vicinity of the victim, that a witness testified the victim was a "harmless bug," and that the victim was still breathing when Friesz started the fire. We therefore conclude competent evidence exists to per-

mit allowing the jury to draw an inference Friesz had not acted in self-defense.

[¶41] We conclude sufficient evidence supports his conviction for manslaughter.

## B

[¶42] Friesz argues that no rational jury could have found him guilty of arson.

[¶43] Under N.D.C.C. § 12.1-21-01, "[a] person is guilty of arson, a class B felony, if he starts or maintains a fire or causes an explosion with intent to destroy an entire or any part of a building or inhabited structure of another...." At trial, the jury received the following instruction regarding arson: "A person who willfully starts or maintains a fire with intent to destroy an entire or any part of a building or an inhabited structure of another is guilty of Arson."

[¶44] Friesz argues no direct or circumstantial proof exists that he "intended to destroy" his brother's home. He points to evidence showing he still had some of his own property there. He contends the evidence instead shows he started the fire because he believed there were others in the back of the residence who were part of a plot to kill him. He asserts he started the fire to defend himself.

[¶45] We are not convinced by Friesz's argument. As the State argues on appeal, evidence was presented at trial to support that Friesz started the fire in the residence with the intent to destroy part of the building. The jury could infer from the evidence that, by setting the fire, Friesz also had the requisite intent to destroy at least part of the building. Although Friesz argues no proof showed he intended to destroy the home, the jury could infer that Friesz had more than one intent in starting the fire, including to kill the victim or destroy evidence. We conclude Friesz has

not shown that the evidence presented at trial permits "no reasonable inference" of guilt in the light most favorable to the verdict.

[¶46] We conclude sufficient evidence supports his conviction for arson.

## IV

[¶47] Although a jury trial was held in this case, the criminal judgment states the district court pronounced judgment "upon a plea of guilty to the offense(s)" of manslaughter and arson. Friesz did not plead guilty, but rather the jury entered a verdict of guilty to the offenses. In such cases, we have said the criminal judgment "should accurately reflect the proceedings and clearly provide the district court entered judgment upon a verdict of guilty." *State v. Grant*, 2009 ND 210, ¶ 25, 776 N.W.2d 209; *see also State v. Marshall*, 1999 ND 242, ¶¶ 11-12, 603 N.W.2d 878.

[¶48] Rule 36, N.D.R.Crim.P., provides that "[a]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." Under Rule 36, "only the sentencing court may correct clerical error." N.D.R.Crim.P. 36, Explanatory Note. The error in the criminal judgment appears to be an oversight by the district court. We therefore remand the case with instructions to correct the clerical error in the criminal judgment to accurately reflect the proceedings.

## V

[¶49] We affirm Friesz's convictions for manslaughter and arson. We remand, however, for the district court to correct the clerical error in the criminal judgment because the judgment does not clearly state the jury entered a verdict of guilty to the offenses.

[¶ 50] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.