# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 163

State of North Dakota,                                          Plaintiff and Appellee

v.

Alexander James Hollis,                                        Defendant and Appellant

No. 20180368

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Gail Hagerty, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Julie A. Lawyer, Burleigh County State's Attorney, Bismarck, ND, for plaintiff and appellee.

Yancy B. Cottrill, Bismarck, ND, for defendant and appellant.

**VandeWalle, Chief Justice.**

[¶1]    Alexander Hollis appealed from an order denying his motion to suppress evidence, which we treat as an appeal from the subsequently entered criminal judgment. Hollis argues the evidence should be suppressed because he was subject to an illegal pat-down search and he was illegally seized when he was taken to the county detention center for detoxification. We affirm the judgment.


I

[¶2]    In April 2018, Bismarck Police Officer Michael Mehrer responded to a call about a loud verbal dispute between a man and a woman in the area of Washington Court. When Mehrer arrived at the scene where the disturbance reportedly occurred, Hollis was standing on the sidewalk. Mehrer testified Hollis had his hands in his pockets, Mehrer requested Hollis to remove his hands from his pockets, and Hollis complied. Mehrer testified Hollis later put his hands back in his pockets, and Mehrer requested he remove them a second time. Mehrer testified Hollis failed to respond to his questions, and Hollis was incoherent when he spoke and did not make sense. Mehrer testified Hollis acted "peculiar" and appeared to be under the influence of a controlled substance.

[¶3]    Other officers arrived on the scene, and Hollis was detained while the officers investigated the reported disturbance. Hollis was handcuffed and Mehrer performed a pat search. Mehrer testified he felt a hard object, approximately 3 inches by 3 inches during the search; the object was not a wallet; and he was concerned the object was a weapon or could be used as a weapon. Mehrer removed the object from Hollis' pocket, and found it was a small scale. Mehrer testified he concluded it was probably drug paraphernalia, but he planned to have the scale sent to the state laboratory for

testing and he did not intend to immediately arrest Hollis for possession of drug paraphernalia.

[¶4] Hollis was placed in the back of the squad car while officers continued to talk to him, and he asked the officers to kill him. Mehrer testified, based on his observations and Hollis' statement, he believed Hollis should be detoxed to prevent danger to himself and the public. Hollis was eventually taken to the Burleigh Morton County Detention Center for detoxification. At the detention center, Hollis was searched and officers located a substance alleged to be heroin on his person. Hollis was charged with unlawful possession of a controlled substance, unlawful possession of drug paraphernalia, and preventing arrest.

[¶5] Hollis moved to suppress evidence, arguing he was illegally seized and subject to an illegal pat-down search. He claimed he should have been released at the scene after the domestic disturbance investigation was complete, and the detention and transport to the detention center constituted an illegal seizure. He also claimed the pat-down search was illegal because the item in his pocket was not of a size and density that would reasonably suggest it might be a weapon.

[¶6] After a hearing, the district court denied Hollis' motion. The court found it was reasonable for officers to detain Hollis while they investigated the reported disturbance because Hollis was the only person at the scene of an event in which officers could reasonably assume presented danger to a potential victim and to officers, Hollis put his hands in his pockets even after being told to remove them, his behavior was "peculiar," he did not respond to inquiries, and his speech was incoherent. The court found a pat-down search was reasonable because the officers could reasonably believe that Hollis posed a danger and that he was armed. The court concluded the pat-down search and removal of the object from Hollis' pocket were permissible. The court found it was reasonable to take Hollis to the county detention center for detoxification based on the officer's observations and Hollis' request that officers kill him. The court also found the booking search at the detention center was reasonable.

[¶7]	Hollis conditionally pled guilty to all three charges, reserving the right to appeal the denial of his motion to suppress.  A criminal judgment was subsequently entered.

II

[¶8]	Hollis argues the district court erred by denying his motion to suppress evidence.  He contends he was illegally seized and subject to an illegal pat-down search.

[¶9]	The standard for reviewing a district court's decision on a motion to suppress is well-established:

> [W]e give deference to the district court's findings of fact and we resolve conflicts in testimony in favor of affirmance.  We will not reverse a district court decision on a motion to suppress . . . if there is sufficient competent evidence capable of supporting the court's findings, and if the decision is not contrary to the manifest weight of the evidence.  Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*State v. Broom*, 2018 ND 135, ¶ 6, 911 N.W.2d 895 (quoting *State v. Kaul*, 2017 ND 56, ¶ 5, 891 N.W.2d 352).

[¶10]	The Fourth Amendment to the United States Constitution and Article I, section 8, of the North Dakota Constitution protect individuals from unreasonable searches and seizures.  *See Broom*, 2018 ND 135, ¶ 7, 911 N.W.2d 895.  Whether officers violated constitutional prohibitions against unreasonable searches and seizures is a question of law.  *Id.*

A

[¶11]	Hollis argues his seizure for detoxification at the county detention center was unlawful because he did not constitute a danger to himself or others.  He contends he should have been released at the scene of the reported disturbance after the officers were finished investigating because he was not a danger to himself or others, and the forceful detention and transportation to the county detention center constituted an illegal seizure.  Hollis does not challenge his initial seizure when officers first arrived at the scene.

3

[¶12] Section 5-01-05.1, N.D.C.C., states, "A peace officer may take any apparently intoxicated individual to the individual's home, to a local hospital, to a detoxification center, or, whenever that individual constitutes a danger to that individual or others, to a jail." To jail an "apparently intoxicated individual" the statute directs there are several mandatory and discretionary procedures. *City of Jamestown v. Erdelt*, 513 N.W.2d 82, 84 (N.D. 1994). The officer is required to make observations necessary to determine whether the person is apparently intoxicated, and the determination is discretionary as long as it is based on the officer's observations. *Id.* This Court has held jail detention is permitted only if the person constitutes a danger to himself or others, and that determination is also left to the officer's discretion so long as it is reasonably based on the officer's actual observations. *Id.*

[¶13] The district court found Hollis had his hands in his pockets when Mehrer approached, Mehrer asked Hollis to take his hands out of his pockets, and Hollis initially complied. The court found Hollis put his hands into his pockets again and Mehrer asked him to remove them a second time. The court found Hollis did not respond to Mehrer's questions, and Mehrer testified Hollis' speech was incoherent, Hollis did not make sense, and he acted peculiar. The court also found Hollis asked the officers at the scene to kill him. The court found, based on Hollis' statements and Mehrer's observations, Mehrer determined Hollis should be detoxed to prevent danger to Hollis and the public and the decision to take him to detox was reasonable.

[¶14] The evidence supports the court's findings. Mehrer testified Hollis did not answer his questions, Hollis made incoherent sentences when he spoke and they were unrelated to the investigation, he acted peculiar in the way he was talking, and he did not make sense. Mehrer testified Hollis' mannerisms and actions mirrored those of someone who is under the influence of narcotics. Mehrer testified he had Hollis sit in the back of the squad car with his legs out of the vehicle so they could continue talking about the investigation, Hollis said he did not know what Mehrer was talking about, and he asked Mehrer to kill him. Mehrer testified he was concerned for his safety because of the way Hollis was talking and asked the officers to kill him, and

4

Mehrer was concerned about Hollis' mental capacity. Mehrer testified he determined Hollis would be placed in the county detention center for detoxification because of his mannerisms, Mehrer believed Hollis was under the influence of something, and detox was the safest place for Hollis for the safety of the officers, Hollis, and the public. Mehrer testified Hollis' statement asking the officers to kill him led Mehrer to believe detoxification was appropriate.

[¶15] Mehrer testified about his actual observations of Hollis' behavior, including that he thought Hollis was intoxicated and that Hollis was a danger to himself based on his statements and actions. Under N.D.C.C. § 5-01-05.1, Mehrer had discretion to decide whether Hollis should be detained for detoxification in the county detention center because his decision was based on his actual observations. The evidence supports the district court's findings and the court's decision is not contrary to the manifest weight of the evidence. We conclude Hollis' seizure for detoxification at the detention center was not unlawful and was not an unreasonable seizure.

B

[¶16] Hollis also argues the pat-down search conducted at the scene of the reported disturbance was unlawful and violated his Fourth Amendment rights because, he contends, the size and density of the scale in his pocket was not of a size and density of a weapon, and therefore that evidence should be suppressed.

[¶17] The district court concluded the pat-down search of Hollis' person was reasonable because officers could reasonably believe Hollis posed a danger and was armed based on the circumstances and the officer's observations of Hollis. The court also concluded the removal of the object from Hollis' pocket was reasonable.

[¶18] Because Hollis' seizure and detention for detoxification at the county detention center was not unreasonable, we do not need to address whether the pat-down search was also reasonable. The evidence would have been admissible under the inevitable discovery doctrine even if the pat-down search was unlawful.

[¶19] "The inevitable discovery doctrine 'establishes that evidence derived from information obtained in an unlawful search is not inadmissible under the fruit-of-the-

5

poisonous-tree doctrine where it is shown that the evidence would have been gained even without the unlawful action.'" *State v. Friesz*, 2017 ND 177, ¶ 26, 898 N.W.2d 688 (quoting *State v. Phelps*, 297 N.W.2d 769, 774 (N.D. 1980)). We have said there is a two-part test to decide whether the inevitable discovery exception applies:

> First, use of the doctrine is permitted only when the police have not acted in bad faith to accelerate the discovery of the evidence in question. Second, the State must prove that the evidence would have been found without the unlawful activity and must show how the discovery of the evidence would have occurred.

*Friesz,* at ¶ 26 (quoting *Phelps*, at 775).

[¶20] There is no evidence Mehrer acted in bad faith when he performed the pat-down search and the evidence established the scale would have been found during the inventory search at the detention center. Mehrer testified Hollis was not under arrest for any crimes when he determined to take Hollis to the detention center for detoxification, including possession of drug paraphernalia for possession of the scale. Hollis was taken to the detention center for detoxification. At the detention center, an inventory search was completed and the scale would have been found in Hollis' pocket at that time. This Court has previously held an inventory search of a person held for detoxification is permissible, in light of three policy considerations: "(1) protection of the detainee's property while it remains in police custody; (2) protection of the police against claims and disputes over lost or stolen property; (3) protection of the police from danger." *Schwindt v. State*, 510 N.W.2d 114, 117 (N.D. 1994). The inventory search at the detention center was reasonable. The evidence inevitably would have been found during the lawful inventory search. *See, e.g., United States v. Garcia*, 496 F.3d 495, 505-06 (6th Cir. 2007) (holding seizure of evidence during pat-down was illegal, but evidence was admissible because it would inevitably have been lawfully discovered and seized during the search of the defendant's person after his subsequent arrest); *United States v. Glenn*, 152 F.3d 1047, 1049-50 (8th Cir. 1998) (holding pat-down search was not justified at the time, but the evidence would have inevitably been discovered in a search incident to the defendant's lawful arrest). We conclude the district court did not err in denying Hollis' motion to suppress evidence.

## III

[¶21]  We affirm the judgment.

[¶22]  Gerald W. VandeWalle, C.J.
Jon J. Jensen
Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte